19203

Nellie COMPTON and Earl D. Compton, Jr., Debbie Compton, Dottie Compton, by their Guardian *Ad Litem*, J. C. Carnes, Respondents, v. TOWN OF IVA and State Workmen's Compensation Fund, Appellants.

(180 S. E. (2d) 645)

Messrs. *Daniel R. McLeod, Atty. Gen., Charles A. Taylor, III, Asst. Atty. Gen.,* of Columbia, *for Appellants,*

Messrs. *Fant, Doyle, Glenn & Vaughan,* and *William L. Thompson,* of Anderson, *for Respondents,*

Messrs. Daniel R. McLeod, Atty. Gen., Charles A. Taylor, III, Asst. Atty. Gen., of Columbia, for Appellants, in Reply,

April 13, 1971.

LITTLEJOHN, Justice:

Earl D. Compton died as a result of an automobile collision on August 12, 1967.

The sole question presented for determination in this Workmen's Compensation case appeal is whether there was competent evidence upon which the Industrial Commission could base a finding that the deceased employee suffered an injury by accident arising out of and in the course of his employment. The case was originally heard before a single commissioner who made an award to the widow and children of the deceased; his opinion and award were affirmed by the full commission; their award was appealed to and affirmed by the court below. We find that the evidence was sufficient to support the award; we affirm the decision of the lower court.

The respondents, widow and minor children of the deceased employee, filed claim for death benefits under the Workmen's Compensation Act. The claimants alleged that the death of the employee, a police officer, on August 12, 1967, was the result of a head-on collision arising out of

and in the course of his employment. The appellants denied that the death was compensable within the meaning of the act.

The relevant facts upon which our decision must rest are as follows:

Compton was employed by the small Town of Iva as a policeman for approximately one year. Sometime in August 1967 he submitted his resignation to the town in order to become employed with the Anderson County Sheriff's Department. The resignation was to become effective on August 15, 1967; therefore on August 12, the date of his death, he was still on the payroll of the Town of Iva, although he had turned in his badge and gun. He was allowed the last two days in an off-duty status.

The Town of Iva has three policemen, one for each of the three eight-hour daily shifts, so that there is only one policeman on regular duty at any given time; however, each of the three is on call and subject to duty on a twenty-four hour basis. The evidence elicited at the hearing before the single hearing commissioner reveals that it was not unusual for an off-duty policeman to be called to perform some task associated with law enforcement as needed. The mayor of Iva testified that this off-duty service became necessary at least twice a month, and that the officers were not required to wear their uniforms on these occasions. On many occasions the town policemen performed law enforcement duties beyond the town limits by aiding county law enforcement officers, state patrolmen, or policemen from surrounding towns. These actions beyond the town limits were usually restricted to directing traffic around accidents. The mayor acquiesced and cooperated in this course of conduct. Compton had assisted in this manner on many occasions in the past, and the state patrol and county officers had often assisted him. The hearing commissioner characterized this reciprocal activity as follows:

"Thus, such activities beyond the corporate limits were for the purpose of promoting the public welfare of the citi-

zens of the Town in assuring them of adequate police protection."

During the last two weeks of his employment Compton worked the second shift, 3:30 p. m. to 11:30 p. m., and was charged with the duty of training his successor, Amos Daniels. During this period he had been called several times to investigate incidents at Johnson's Cafe, a frequently troublesome night spot.

On August 12, 1967, Compton had been given the day off by the mayor. He still considered himself to be "on call" that day according to the testimony of his wife. At about 8:30 p. m. Compton, his wife and three children, went to the home of Thomas Cheek, the third shift policeman. The visit was a social one, and although Compton did not have on his uniform, he was carrying his own gun and policeman identification card. During their visit with the Cheek family, Mayor Thomas called Cheek and requested that he aid novice policeman Daniels in investigating a disturbance at Johnson's Cafe. Both Cheek and Compton left the home. They went by the home of the mayor and the mayor knew that Compton was helping to answer the call. Compton then called the mayor to report that the disturbance had subsided. Mayor Thomas testified that because Compton was still employed by the town he was authorized and expected to be of assistance; the mayor approved of Compton's participation in the investigation.

After completing their investigation at Johnson's Cafe, Cheek and Compton drove to the ball park in Iva; there they saw State Highway Patrolman L. E. Browder, who had been patroling the Iva area for some months.

Compton got in the patrol car with Browder. Cheek returned home alone. The following testimony of Browder is indicative of what Compton and Browder intended to do:

"Q. And after he [Compton] got in the car, tell us, as best you can, what happened?

"A. As best as I remember, he got in the car and we were gonna ride back by Johnson's Cafe and in the mean-

time we got a call to a wreck at the City Limits of Anderson, on South Main Street, motorcycle accident, and we proceeded to come up to work the accident.

"Q. And were you going to go back to the cafe after you finished the accident?

"A. To the best of my memory, yes, sir."

Cheek testified that when disturbances occurred at Johnson's Cafe they usually went back and checked on it "two or three times."

A highway patrolman is required to respond immediately to a radio call such as Browder received. Accordingly, he, with Compton in the car, proceeded toward the place of the wreck. About 12 miles from Iva the patrol car was involved in a head-on collision in which Compton was killed and Browder was seriously injured.

The commission concluded that all of the circumstances surrounding the death, taken along with the custom of reciprocal law enforcement, led to the reasonable inference that Compton's death arose out of an in the course of his employment.

In *Fowler v. Abbott Motor Co.*, 236 S. C. 226, 113 S. E. (2d) 737 (1960), this court held:

"An injury arises in the course of employment within the meaning of the Workmen's Compensation Act when it occurs within the period of the employment at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling those duties, or engaged in doing something incidental thereto. An accident arises out of the employment when it arises because of it, as when the employment is a contributing proximate cause. These conditions must concur before the Act can apply. *Schrader v. Monarch Mills*, 215 S. C. 357, 55 S. E. (2d) 285, and *Portee v. S. C. State Hospital*, 234 S. C. 50, 106 S. E. (2d) 670."

In all workmen compensation proceedings the Industrial Commission is the fact finding body, and our court will not disturb its findings if supported by reasonable inferences drawn from the testimony. *Hamilton v. Little,* 197 S. C. 434, 15 S. E. (2d) 662 (1941). Appellants argue in effect that Browder's testimony is of no value because he received in the wreck a brain concussion causing lapse of memory as to things which happened before the wreck. His condition was brought out at the trial and goes to the weight and not the admissibility of his testimony; the value of his testimony was a matter for consideration by the finders of fact. We cannot say that it should have been disregarded.

Appellants challenge the legality of the custom whereby an Iva town policeman gave assistance to other law enforcement officers beyond the town limits. The Town of Iva, having acquiesced in the custom and received benefits from the custom, is in no position to complain. We do not have before us the question of what authority, if any, the Iva town police could exercise outside the town limits. It is common knowledge that in the realm of law enforcement it has become increasingly more desirable for a police officer to answer calls accompanied by another policeman. Under the circumstances we cannot say that the actions of Compton were illegal, nor can we say as a matter of law that his activities preclude his beneficiaries from claiming compensation.

From the whole of the showing made, considering the evidence most favorable to the claimants, as we are required to do, we cannot say as a matter of law that the evidence is susceptible of only one reasonable inference. We rather think that reasonable men could reach different conclusions, and that some of them could logically conclude that Compton's death arose out of and in the course of his employment as a policeman for the Town of Iva.

It therefore becomes our duty to

Affirm.

Moss, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.