Thomas Jefferson GREER,
Deceased, Employee,

Rose D. Greer, Claimant-Appellant,

v.

**DEPARTMENT OF LIQUOR CONTROL,**
State of Missouri,
**Employer-Respondent,**

and

**Travelers Insurance Company,**
**Insurer-Respondent.**

No. 11065.

Missouri Court of Appeals,
Southern District,
Division Three.

Nov. 26, 1979.

Motion for Rehearing or to Transfer to Supreme Court Denied Dec. 19, 1979.

Application to Transfer Denied
Feb. 11, 1980.

John W. Reid, II, Schnapp, Graham & Reid, Fredericktown, for claimant-appellant.

James B. Kennedy, Evans & Dixon, St. Louis, for respondents.

GREENE, Judge.

Thomas Jefferson Greer (Greer) was an employee of the Department of Liquor Control, State of Missouri (Employer). On February 11, 1971, Greer, accompanied by Sgt. Kenneth Lancaster of the Missouri Highway Patrol, was crossing a muddy field when he collapsed and died of an apparent heart attack. His widow, Rose D. Greer, (Widow) filed a claim of workmen's compensation benefits against the Employer and its insurance carrier, Travelers Insurance Company (Travelers). The Employer denied the claim.

After a hearing, the workmen's compensation referee issued an award of benefits to the Widow, ruling that Greer's death was an accident and that it arose out of and in the course of his employment. The Employer and Travelers appealed. The Labor and Industrial Relations Commission (Commission) reversed the ruling of the referee, in a split decision, and issued a final award denying benefits, on the theory that Greer's death, though accidental, did not arise out of and in the course of his employment. The Widow appealed to the circuit court of Stoddard County. After hearing, the trial court entered judgment affirming the deci-

sion of the Commission, stating that the decision of the Commission was supported by sufficient competent evidence to warrant its finding that Greer did not die as the result of accidental injury arising out of and in the course of his employment and that such evidence supported the award denying compensation to the Widow. The Widow appeals. Insurer-respondent has filed a motion to dismiss the appeal for claimed violations of Rule 84, V.A.M.R. The motion is overruled.

The sole point relied on, though perhaps inarticulately stated, is that the trial court erred in affirming the decision of the Commission for the reason that the Commission's decision was not supported by sufficient evidence to warrant the award in question and that all of the substantial competent evidence was to the effect that, at the time of his death, Greer was engaged in an activity arising out of and within the scope of his employment.

■ The scope of review by an appellate court in workmen's compensation cases is limited. Section 287.490.1, RSMo 1969, V.A.M.S.,[1] sets out the grounds for appeal and the scope of review. By reason of that statute, the only possible grounds for reversal of this case are 1) that the facts found by the Commission do not support the award, or 2) that there was not sufficient competent evidence in the record to warrant the making of the award. We view the record in a light most favorable to the findings and award of the Commission, *Johnson v. Simpson Oil Co.*, 394 S.W.2d 91, 96 (Mo.App.1965), and in so doing, recognize that the Commission is the sole judge of the credibility of the witnesses and of the weight of the evidence. *Welborn v. Southern Equipment Company*, 395 S.W.2d 119, 126 (Mo. banc 1965). The decision of the Commission must be affirmed, if it is supported by competent and substantial evidence, and will be set aside only if such decision is clearly contrary to the overwhelming weight of the evidence. *Williams v. S. N. Long Warehouse Company*, 426 S.W.2d 725, 733 (Mo.App.1968). We do not know of any Missouri case containing an all-embracing definition of the phrase "arising out of and in the course of his employment." Our courts have consistently held that each case involving the application of the facts to such phrase should be decided upon its own peculiar facts and circumstances. *Lunn v. Columbian Steel Tank Co.*, 364 Mo. 1241, 1246, 275 S.W.2d 298, 301 (1955).

■ The facts and circumstances of this case are as follows. Greer was an agent of the Missouri Department of Liquor Control and had been employed as such for a number of years prior to his death. His primary duty was the investigation of liquor law violations. His job description (claimant's exhibit B) included a duty to maintain good working relationships with city, county, and state officials. His job manual (claimant's exhibit D) contained the policy statement, "[E]ach agent should cooperate with federal, state, and local law enforcement agencies to become as knowledgeable as possible concerning crime in his particular area . . . ." This policy was approved and

1. "The final award of the commission shall be conclusive and binding unless either party to the dispute shall within thirty days from the date of the final award appeal to the circuit court of the county in which the accident occurred, or if the accident occurred outside of this state, then in the county where the contract of employment was made. Such appeal may be taken by filing notice of appeal with the commission, whereupon the commission shall under its certificate return to the court all documents and papers on file in the matter, together with a transcript of the evidence, the findings and award, which shall thereupon become the record of the cause. Upon appeal no additional evidence shall be heard and in the ab-sence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;
(2) That the award was procured by fraud;
(3) That the facts found by the commission do not support the award;
(4) That there was not sufficient competent evidence in the record to warrant the making of the award."

emphasized by Greer's supervisors through letters and memoranda from the supervisor to district supervisors and agents in the field. The agents worked with members of the Missouri State Highway Patrol in the investigation of liquor law violations. On many occasions, the agent went with a trooper, in the trooper's automobile, to conduct the investigations.

George Liebig, Greer's district supervisor, testified at the hearing before the referee. Liebig stated that while working with highway patrol troopers on liquor cases, it was sometimes necessary for the trooper to divert to other duties, in answer to emergency calls, such as reports of automobile accidents and of crimes. This had happened to Liebig several times when he was an agent. When it did happen, he always assisted the trooper. Liebig stated that while doing so, he was on duty, due to the policy of the Department of Liquor Control to cooperate with other law enforcement personnel.

Corporal Arthur G. Collier was a member of the Missouri State Highway Patrol. He had known Greer since 1965 and had worked with him on a number of occasions in the investigation of liquor law violations. Greer usually went with Collier, in Collier's patrol car, to conduct the investigations. Occasionally, Collier would have to answer other calls while Greer was in the car with him. Greer went with Collier on such calls and had assisted him in arresting suspects on several prior occasions.

Collier met Greer at 9 a. m. on February 11, 1971, at the magistrate courtroom in Bloomfield, Missouri. Liquor law violation cases were pending in the court on that day. Collier had been working on the cases with Greer for a considerable period of time. Both men stayed in court until noon. They had lunch and then started to contact witnesses in the cases. They were in Collier's patrol car. They had not finished the job by 4 p. m., at which time Collier went off duty. Collier suggested that Greer continue the search for witnesses with Sgt. Lancaster of the patrol, as Lancaster knew where some of the witnesses could be located. Collier called Lancaster on the radio

and advised him that Greer would meet Lancaster at the highway patrol zone office in Dexter about 3:45 p. m. Collier then drove to that location, where they met Lancaster. Greer got in Lancaster's patrol car to continue the unfinished investigation. He did not make a practice of "joy riding" with Lancaster.

Collier got back in his patrol car and left to go home. Shortly thereafter, he heard a radio dispatch to Lancaster. The dispatch was to the effect that there was a person, acting as if he were drunk, in a barn near the complainant's home. In Lancaster's testimony, he recalled that the dispatch said that the person was acting suspiciously. Lancaster drove to the location of the complaint, which was a farm home just south of the U.S. 60 and 114 junction in Stoddard County. The field near the barn where the suspect was supposed to be was composed of gumbo. Gumbo is a type of soil that becomes very sticky and hard to walk in when wet and muddy. Several witnesses, including Lancaster, testified that the field was very wet, muddy, and almost impossible to walk through. The gumbo mud had a suction effect, and it required great effort and exertion to pull one foot out of the mud and place it ahead for another step. It was necessary to cross the field to reach the barn. Lancaster and Greer started across the field. As they were crossing the field, Lancaster noting that the field was almost impassible, told Greer that he could go back to the patrol car, if he wanted to. Greer replied that he would go with Lancaster because "we didn't know what we might be getting into." Lancaster was walking in front of Greer. It was a physical strain for him to walk. Lancaster was out of breath and breathing very hard. He reached the barn and found a man who was very intoxicated. Lancaster then heard a noise behind him, turned and saw Greer on the ground, partially in a ditch. Lancaster went back to Greer. Greer's face was flushed, his lips were blue, his eyes were glassy and set, and there was no sign of breathing or life. Greer was dead.

A witness, J. E. Adkins, had seen Greer and Lancaster crossing the field. He testified that Greer fell twice and did not get up after the second fall. Adkins went to assist Lancaster in helping Greer, as he knew something was wrong. When he got to the scene, Greer was dead. Greer's shoes were muddy and had gobs of mud on them when they took him out. Adkins said he would not have walked in the field without a very good reason, because of its muddy condition. They had great difficulty in removing Greer's body from the field because of the mud.

There was medical evidence that Greer had prior heart disease and that Greer died of a cardiac arrest, which was caused by the unusual exertion and strain of walking through the very muddy and sticky gumbo field. The referee, in his written award, found that an accidental injury, from which Greer died, occurred within a period of time and at a place where Greer might have been expected to be, and while he was performing his duties in compliance with both oral and written instructions of his superiors, and, therefore, Greer's fatal accidental injury arose out of and in the course of his employment. Although there was medical evidence to the contrary, the Commission, as previously stated, affirmed the referee's finding that there was an accident, under the facts and the law, but denied recovery for the sole reason that the accident did not arise out of and in the course of Greer's employment, in that he was not engaged in the investigation of a liquor law violation at the time of his death and that his volunteer action in assisting Lancaster was not incidental to his employment.

There is only a minimal amount of factual dispute in this case. The only significant difference in testimony was that Corporal Collier testified that the radio dispatch that triggered the trip that resulted in Greer's death mentioned a drunk, or someone acting like a drunk, in a barn. Sgt. Lancaster said that the report involved a "suspicious" person. We fail to see where that slight difference in the testimony of the two witnesses, who, at the hearing held before the referee on December 5, 1975, were doing their best to recall the exact words in a radio dispatch that was issued almost 4 years prior to that date, is material here. All of the evidence in the case conclusively shows that Greer was acting within the scope of his employment when he entered Lancaster's patrol car. He did so with the intention of continuing the business of his employer, namely the investigation of liquor law violations. Greer had not finished his day's work. The unimpeached testimony of Corporal Collier on this point is conclusive.

The radio dispatch came after Greer entered Lancaster's patrol car. It called for an action on the part of Lancaster (investigation of a suspicious person in a barn) that was a possible diversion from the main purpose of the trip (investigation of liquor law violations). But, was it such a diversion that Greer, by not saying, "Let me out of the car", or "Take me back to the zone office", lost his employment identity? The answer is no, because all of the evidence conclusively shows that it was a custom and practice for liquor control agents to accompany and assist other law enforcement officers in their duties when a divergent call, such as the one here, was received, and also that such custom and practice was not only encouraged, but was ordered by Greer's supervisors. It is true that after Lancaster and Greer started across the muddy, sticky gumbo field, Lancaster told Greer he could go back to the patrol car. However, the only reasonable inference to be gained from this remark was that Lancaster was concerned about the possible effect that the hardship of crossing the field, due to adverse conditions, would have on Greer. The only possible inferences that can be drawn from Greer's continuing the journey are, that 1) his employer expected him to cooperate with and assist Lancaster, and 2) Lancaster might need him.

Greer continued across the field, without protest from Lancaster, and the effort cost him his life. There is absolutely nothing in the record to indicate that the effort to aid Lancaster was of a personal benefit to

Greer. To the contrary, at the best, it would contribute to his discomfort. At the worst, it could contribute to his death, which it did. The venture into the field was job related. Greer's death, during the trip, was therefore job related. There is no evidence to the contrary.

In summary, all of the competent evidence supports an inference and finding that when Greer's accidental death occurred, he was engaged in an activity arising out of and within the scope of his employment. In reaching this conclusion, we disregard the statement of Supervisor Liebig that Greer was "on duty", at the time of his death, and the testimony of Lancaster that the trip to the barn did not involve any business of the Department of Liquor Control. Both statements are conclusions and opinions and are not binding here.

In reaching our conclusion, we are mindful that the workmen's compensation law is to be construed liberally, with a view to the public welfare, § 287.800, RSMo 1969, V.A.M.S., and is intended to extend its benefits to the largest possible class. *Hickey v. Board of Education of St. Louis*, 363 Mo. 1039, 1043, 256 S.W.2d 775, 777 (1953). In this pursuit, the law should not be unnecessarily restricted by technical construction of the words arising "out of and within the scope of his employment." See *Morehead v. Grigsby*, 234 Mo.App. 426, 432, 132 S.W.2d 237, 240 (1939). Doubts, regarding the right of an employee or his dependents to compensation, should be resolved in favor of the employee. *Baer v. City of Brookfield*, 366 S.W.2d 469, 471 (Mo.App.1963).

In order to uphold the award of the Commission denying benefits to the Widow in this case, we would have to take a myopic view of the evidence here and place a strained and unrealistic interpretation on the facts. By so doing, we could, and probably would, cause considerable mischief and interference with harmonious relationships between members of law enforcement agencies working together for the common good. Such members would be inclined to say, "That's not my job", when faced with a situation where help to a fellow officer, even though that help is condoned and encouraged by his superiors, would result in a denial of benefits to his loved ones if he is killed or injured in such activity. Such a result would be intolerable. We have not been cited any Missouri case comparable to this one by either party, and find none. However, see *Elliott v. Darly*, 382 S.W.2d 70, 74 (Mo.App.1964) where it was held that an employer extends his liability by directing performance of additional duties or acts outside the usual scope of employment, and *Compton v. Town of Iva*, 256 S.C. 35, 180 S.E.2d 645 (1971), where it was held that the employer-town, which had acquiesed in the custom whereby town policemen gave assistance to other law enforcement officers outside of the town limits, could not complain of the activities of a policeman, who was killed while aiding a State Highway Patrolman outside of the town limits, and that such activities did not, as a matter of law, preclude his beneficiaries from recovering compensation benefits.

We find that the decision of the Commission is not supported by competent and substantial evidence and is clearly contrary to the overwhelming weight of the evidence. The judgment of the circuit court is reversed and the cause is remanded to that court with the direction that it, in turn, remand the case to the Industrial Commission of the State of Missouri, with directions that the Commission set aside its decision denying benefits and reinstate the award to the dependent Widow entered by the hearing referee in this cause.

All concur.