CLARA M. LUNN, ANNA LUNN, and DORIS VIRGINIA CHRISTIAN, Plaintiffs-Appellants, v. COLUMBIAN STEEL TANK COMPANY, Employer, TRAVELERS INSURANCE COMPANY, Insurer, Defendants-Respondents, No. 44217—275 S. W. (2d) 298.

Division One, January 10, 1955.

Motion for Rehearing or to Transfer to Banc Overruled, February 14, 1955.

1242

*Milam L. R. Wade* for appellants.

*Reed O. Gentry* and *Rogers, Field & Gentry* for respondents.

COIL, C.—This is a workmen's compensation case.

Plaintiffs-appellants were claimants of compensation which they alleged was due them on account of the death of Charles W. Lunn, their husband and father, respectively. Respondents are the Columbian Steel Tank Company, employer, and Travelers Insurance Company, insurer. Plaintiffs claimed and respondents denied that Lunn's death occurred by reason of an accident arising out of and in the course of his employment. Plaintiffs have appealed from the judgment of the circuit court affirming the award of the Industrial Commission denying compensation. Neither the divisional referee nor the Industrial Commission, on review, stated specific findings of fact or conclusions of law.

The essential facts are not in dispute. Lunn, 42 years of age, was an employee of Columbian Steel Tank Company. He arrived for work on July 13, 1951, at employer's place of business, which consisted of several buildings located in the "West Bottoms" area (south of 12th and generally between Genesee and Mulberry Streets) in Kansas City. This entire area was inundated by a flood of the Kaw River on July 13, 1951. Lunn parked his private truck on the west side of Genesee, facing south, about 150 to 175 feet south of 12th; a location customarily used by employees for parking. This was across the street from the company's building known as the "bolted tank" building. The particular building to which Lunn reported that morning was "warehouse E", located at Hickory and 13th Street Terrace, some four or five blocks from the place where Lunn's truck was parked.

Lunn worked under foreman Bowman unloading some lumber, after which Lunn and the employees in the crew with him were advised, in effect, that flood water probably would enter the area and that anyone who so desired could then leave, but that employer would appreciate it if any of the employees would volunteer to stay and help move some bolts from the basement of warehouse E to a higher floor to protect such bolts from water damage. Lunn and fellow employee, Crawford, (apparently among others) agreed to stay and help move the bolts. The foreman stationed a man outside the building to watch for and warn if and when flood waters entered the area. After about 15 minutes the watchman told the

foreman that flood waters were entering the area and the foreman told the men to get out. The crew, including Lunn and Crawford, left the building. The foreman stayed for an additional ten minutes and then proceeded from warehouse E north for about 1½ blocks to 12th Street and then east to the 12th Street viaduct.

Crawford testified that it was shortly before 11:30 a.m. when they finished the job of unloading the lumber truck; that he and Lunn stayed voluntarily to work in response to the employer's request to stay and help get the bolts out of the basement onto some waiting trucks; that in less than 15 minutes he, having gone outside the building, saw water coming and "hollered" for everybody to get out; that he and Lunn left together; that they went "pretty fast" from warehouse E north on Hickory to 13th and west on 13th to Liberty where the main office of the company was located; that he, Crawford, went into the office to check out and get his clothes, but found that the time cards had been pulled; that Lunn did not go into the main office; that the last time he (Crawford) saw him, Lunn was proceeding west on 13th some place between Hickory and Liberty; that he did not know where Lunn went from that place; that he knew that no work was done in warehouse E after he and Lunn left; that, after changing clothes, along with some other men in the main office, he (Crawford) proceeded to the 12th Street viaduct.

Another employee, King, testified that he had been working at the "galvanizing building" at the corner of 12th and Hickory, which would appear from the exhibits to be 3 or 3½ blocks from the place where Lunn's automobile was parked. King said that he and others were warned by a man from the stockyards to get out of the area. King ran to his automobile which was also parked on the west side of Genesee facing south, about 150 feet south of 12th Street. Lunn's truck was parked about three cars south of King's automobile. After King got in his car and had turned it around so that it was heading north toward 12th Street, he saw Lunn on the west side of Genesee walking south toward and close to his (Lunn's) truck. At that time there was no water around these automobiles but water was then coming "down the street (from south to north) fast", according to King. King drove to 12th Street, turned east for 50 to 75 feet. His automobile's motor was "drowned out" by flood water as it waited in a line of traffic. He left his automobile and walked on east to the 12th Street viaduct. This was about 11:30 a.m.

Lunn was not again seen alive by anyone. His body was found on July 16, 1951 (three days after the flood waters first entered the area), on the west side of Genesee Street about 6 to 8 feet west of the west curb and about 300 feet south of 12th Street. Lunn at the time had on his work clothes, i.e., he had not changed to his other clothes which he ordinarily wore to and from work. Lunn's truck was found

and sold for salvage, but the evidence does not disclose where the truck was found. It was stipulated that the medical evidence would show that Lunn met his death by drowning.

W. M. Gadberry, who was sales manager and had "overall supervision of the entire establishment" for Columbian Steel Tank Company, testified that the United States Engineers had told him on the morning of the 13th that there would be no flood waters in the district of employer's installations; that his first *actual* knowledge that flood waters had entered the area was when he saw the water, but he said that he and other officials of the company had become alarmed despite the statements of the engineers and, on their own initiative, and after he had looked at the river level, and after a hurried conference, they attempted to get some of their materials off the first floor and up to the second floor of warehouse E. He said that after this [301] hurried production conference it was decided "we would take it upon our own responsibility to see what we could do to protect ourselves" and that they did that. During the entire morning of the 13th, some employees had been placing sandbags around the "galvanizing pot" at one of the installations. Flood water was about 14 feet deep on Genesee Street at the place where Lunn's body was found.

We have appellate jurisdiction because the "amount in dispute" is in excess of $7,500. Foster v. Aines Farm Dairy Co., Mo. Sup., 263 S.W. 2d 421, 423[1].

█ In reviewing this case "we have the duty of determining whether the Commission's award is supported by competent and substantial evidence upon the whole record. Const. Art. 5, § 22, V.A.M.S. This does not mean that we may substitute our own judgment on the evidence for that of the Commission. But we are authorized to decide whether the Commission could have reasonably made its findings and reached its result, upon a consideration of all of the evidence before it, and to set aside its decision if clearly contrary to the overwhelming weight of the evidence. Wood v. Wagner Electric Corporation, 355 Mo. 670, 197 S.W. 2d 647." Foster v. Aines Farm Dairy Co., supra, 263 S. W. 2d 423[2, 3].

█ In this case we note that the finding of the Industrial Commission was: "We find from all the evidence that the death of Charles William Lunn, employee herein, was not the result of an accident July 13, 1951, arising out of and in the course of his employment with Columbian Steel Tank Company, as alleged. Compensation, therefore, must be and the same is hereby denied." It is apparent that the finding of the Industrial Commission was not upon a stated ground of the lack of credibility of the claimants' witnesses. None of the witnesses, either for claimants or employer, were contradicted or impeached. In fact, most of the matters testified to by claimants'

witnesses were corroborated by employer's witnesses. As we have heretofore stated, the facts were essentially undisputed and the record discloses that there was no competent evidence which involved the credibliity of witnesses. Thus, while claimant had the burden of proof on the issue as to whether deceased's death was the result of an accident which arose out of and in the course of his employment, nevertheless "the Commission may not arbitrarily disregard and ignore competent, substantial and undisputed evidence of witnesses who are not shown by the record to have been impeached, and the Commission may not base their finding upon conjecture or their own mere personal opinion unsupported by sufficient competent evidence." Sanderson v. Producers Commission Ass'n., 360 Mo. 571, 577[3] [4] [5], 229 S. W. 2d 563, 566[2] [3, 4].

It is apparent, therefore, that the Commission's finding was not based upon its belief that the testimony of any of claimants' witnesses was false. On the contrary, the Commission's finding was either a finding of fact upon conflicting reasonable inferences supported by the undisputed testimony or a finding that all the undisputed evidence was legally insufficient to establish the contested claim.

"It is thought that no all-embracing definition of the phrase 'arising out of and in the course of his employment' has yet been framed. Every case involving the phrase 'should be decided upon its own particular facts and circumstances and not by reference to some formula.' Leilich v. Chevrolet Motor Co., 328 Mo. 112, 40 S.W. 2d 601, 605; Finley v. St. Louis Smelting & Refining Co., Mo. Sup., 233 S.W. 2d 725; Goetz v. J. D. Carson Co., 357 Mo. 125, 206 S.W. 2d 530; Lardge v. Concrete Products Mfg. Co., supra [Mo. Sup., 251 S.W. 2d 49]; Section 287.120 RSMo 1949, V.A.M.S. But it has been said that an injury arises 'out of' the employment when there is causal connection between the conditions under which the work is required to be performed and the resulting injury (and that an injury to an employee arises 'in the course of' his employment when it occurs within the period of his employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental thereto). Wahlig v. Krenning-Schlapp Grocer Co., 325 Mo. 677, 29 S.W. 2d 128. See also Fowler v. Baalmann, 361 Mo. 204, 234 S.W. 2d 11; Morgan v. Duncan, 361 Mo. 683, 236 S. W. 2d 281; Goetz v. J. D. Carson Co., supra; Tabor v. Midland Flour Milling Co., 237 Mo. App. 392, 168 S.W. 2d 458." Foster v. Aines Farm Dairy Co., supra, 263 S.W. 2d 423[4-6].

Section 287.020(5) RSMo 1949, V.A.M.S., provides: "Without otherwise affecting either the meaning or interpretation of the abridged clause, 'personal injuries arising out of and in the course of such employment,' it is hereby declared not to cover workmen ex-

cept while engaged in, or about the premises where their duties are being performed, or where their services require their presence as a part of such service.''

■ Was the Commission's finding that Lunn's death was not the result of an accident arising out of and in the course of his employment supported by substantial and competent evidence on the whole record?

We think these conclusions are compelled by the undisputed evidence we have summarized:

1. That deceased was accidentally drowned as he attempted to leave the flooded area in which employer's buildings were located. True, there was no direct evidence as to employee's exact course of conduct from the time he was last seen a few minutes before the flood waters reached the place in the area where he was last seen, and of course there was no direct evidence as to the manner of his drowning. All the circumstances in evidence, however, sustained but one reasonable conclusion, viz., that Lunn was drowned as he attempted to leave the flooded area within a reasonable time and by pursuing a reasonable course after having been directed by employer to leave warehouse E.

2. That employee left warehouse E some minutes before he was drowned, and that the place of his death was not on the premises known as warehouse E or within the physical confines of any of the other of employer's installations in the flooded area.

3. That there was no provision connected with employee's usual employment which made employee's going to and returning from work a part of his usual employment.

4. That a proximate cause of employee's death was an act of God.

5. That employer entered into a special arrangement or contract of employment with employee whereby employee was to perform the specific task of preserving employer's property from imminent flood damage.

6. That employer had knowledge at the time he entered into this arrangement with employee of the probability that the West Bottoms area, in which employer's various establishments were located, would be inundated by flood waters, and that this inundation would begin while employee was still in that area.

7. That employer by virtue of the special arrangement with or employment of employee under such circumstances, created, and subjected employee to, an unusual risk and danger, viz., the danger of working in and leaving in time a building situated in an area which was in imminent danger of being flooded. That this danger was a hazard of the special employment, and that this hazard, created by the employer and brought about by the nature of the employer's special business, extended to the area surrounding employer's various

installations (including warehouse E) and including the place where employee was drowned in an effort to leave the flood hazard area. And that employee was killed as a result of the hazard created by employer and a hazard to which employer exposed him because of his special employment and a hazard to which members of the general public were not exposed.

(As noted, a proximate cause of Lunn's death was an act of God. And while it is, of course, true that employer did not create the hazard of the flood, he did create the hazard or danger as to this employee by employing him to remain and work in a building in an area in imminent danger of being flooded.)

Now, it seems to us that employee's death "arose out of" his employment, in that there was a direct causal connection between the very work which he was directed to do and his death. To recover compensation, however, the accident must not only "arise out of the employment" but must also be in the "course of employment."

Ordinarily when an employee who has fixed hours and a fixed place of work, has finished his work and has left the employer's premises, an injury sustained by him thereafter is not compensable. Donzelot v. Park Drug Co., Mo. App., 239 S.W. 2d 526, 529[2]. And it is true that here the employee had ceased the special work of preserving his employer's property; but he had ceased only to escape the very same danger from which the property was being preserved. True, also, is it that Lunn had departed from warehouse E and had reached a place in the danger area which was not within the physical confines of any of employer's various installations. We are of the opinion, however, that under the peculiar and unusual circumstances of this case, Lunn, at the time of his death, was at a place where he was required to be as part of and as incident to the performance of his special services. The hazard of the flood, created by employer in so far as its effect upon Lunn was concerned, was so intimately connected with the special work which employee was doing at the very time he had to leave warehouse E, as to make employee's actions in leaving the hazardous area a part and parcel of his special employment. Employer, in effect, made the "danger area", including the place where Lunn's car was parked, the "premises" of the special employment, and when employee was attempting to leave that place of employment, he was in "the course of his employment." We think the facts of this case present a situation which impels us to include it within a proper concept of "course of employment."

We have found no other case in which the instant peculiar and unusual facts and circumstances were involved. And the cases relied on by respondents are of little help under the unusual facts here present. We think that a determination of whether Lunn's accidental drowning arose out of and in the course of his employment must be

decided upon the particular, unusual facts and circumstances of this case and not by attempting to fit these facts and circumstances to a formula which, however proper for most cases, would, if here applied, thwart the intended purview of the Workmen's Compensation Act.

We hold that the Commission's award denying compensation is not supported by competent and substantial evidence upon the whole record. The judgment of the circuit court affirming that award is reversed. *Van Osdol* and *Lozier, CC.,* concur.

PER CURIAM:—The foregoing opinion by COIL, C., is adopted as the opinion of the court. All the judges concur except *Westhues, J.,* not sitting.