**Vernon VOGEL, Respondent,**

v.

**HALL IMPLEMENT COMPANY and John Deere Insurance Company, Appellants.**

**No. KCD 28687.**

Missouri Court of Appeals, Kansas City District.

May 2, 1977.

Motion for Rehearing and/or Transfer Denied June 1, 1977.

Application to Transfer Denied July 11, 1977.

Wendell E. Koerner, Jr., St. Joseph, for appellants; Brown, Douglas & Brown, St. Joseph, of counsel.

Price Shoemaker, St. Joseph, for respondent.

Before SWOFFORD, P. J., PRITCHARD, C. J., and DIXON, J.

SWOFFORD, Presiding Judge.

This is a Workmen's Compensation case. The employer, Hall Implement Company (Hall), and its insurer, John Deere Insurance Company (Deere), appeal from a judgment of the Circuit Court affirming an award of the Labor and Industrial Relations Commission (Commission) in favor of the employee-respondent, Vernon Vogel (Vogel), for permanent and total disability.

The only issues raised by Hall and Deere before the Commission and in the court below were the nature and extent of Vogel's injuries and resulting disability. Here, they raise two points seeking the mandate of this court reversing the award or, in the alternative, ordering a remand to the Commission for the taking of additional evidence. They assert: *First,* that the court below should have set aside the Commission's award because there was not sufficient competent evidence to support an award for permanent total disability, and *second,* there was not sufficient competent evidence to support the finding that Vogel's condition was the result of the accident sustained by him.

It is appropriate to recognize at the outset the firmly established confines of judicial review in this type of proceeding, of particular significance in the determination of this appeal. The constitutional provision covering judicial review of administrative decisions states that "such review shall include the determination whether the same are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record." Article 5, Section 22, Constitution of Missouri.

██ The controlling decisional law is clear that the reviewing court should not substitute its judgment for that of the Commission (even though the court might have been persuaded to a different initial conclusion); the Commission's award should be set aside only when it is not supported by substantial evidence or when it is clearly contrary to the overwhelming weight of evidence; the evidence, including all legitimate inferences, must be viewed in the light most favorable to the award; the Commission judges the credibility of the witnesses and the weight of their testimony; and the ultimate obligation of the reviewing court is to determine from the whole record whether the Commission could reasonably have made its findings and award. *Merriman v. Ben Gutman Truck Service, Incorporated,* 392 S.W.2d 292, 296[1–3] (Mo.1965); *Brown v. Missouri*

*Lumber Transports, Inc.,* 456 S.W.2d 306, 307 (Mo.1970); *Slider v. Brown Shoe Company,* 308 S.W.2d 306, 307[1, 2] (Mo.App. 1957); *Stegall v. St. Joseph Lead Company,* 465 S.W.2d 855, 861[3] (Mo.App.1971); *Saale v. Alton Brick Company,* 508 S.W.2d 243, 246[1–4] (Mo.App.1974), and *Smith v. Plaster,* 518 S.W.2d 692, 696[1] (Mo.App.1975).

Giving appropriate recognition to these controlling principles, the facts, as pertinent to the points raised on appeal, may be thus summarized:

Vogel, the claimant, was nearing his 53rd birthday on March 11, 1972. He had finished grade school and then engaged in farming until 1947. He was then employed by Swift and Company in its packing plant and worked for the company for 17½ years, until it shut down. He went to work with Hall's in 1967 as a farm equipment set-up man assembling heavy farm implements of various kinds. All of these occupations involved heavy manual labor.

On March 11, 1972, he was engaged in removing a cornhead from a Massey-Ferguson combine, when spring loaded arms holding the cornhead suddenly released and the arms struck him across the chest. That same day, he was seen by Dr. Butler, an associate of the Thompson-Brumm-Knepper Clinic (Clinic) at St. Joseph, Missouri, whose initial diagnosis was contusion of the lower sternum and chest. He was treated as an outpatient at the Clinic from March 11, 1972 to April 4, 1972, principally by Dr. Donald Stallard, an internist, and was also seen during that period by Dr. Fischer, a thoracic surgeon, both associates of the Clinic.

His condition deteriorated and he was admitted to the Methodist Hospital at St. Joseph on April 4, 1972, where it was found that he had a swollen and tender left leg with one or more blood clots. Bloody fluid was removed from his chest cavity and the final diagnosis was: "Fracture second and third ribs, right; contusion (crack) of sternum; pulmonary embolism and infarction." Dr. Stallard testified that these conditions were the result of the accident of March 11, 1972.

He was seen frequently by Dr. Stallard after his release from the hospital and was given anticoagulant medication. Vogel complained of a complete lack of his previous strength and energy, and shortness of breath and dizziness. He was sent to Kansas University Medical Center by the Clinic for examination and evaluation, and such diagnosis was reported "congestive heart failure, cause unknown".

Vogel continued under Dr. Stallard's care and his complaints persisted. In July, 1974, Dr. Stallard referred him to Dr. Ben McCallister, a cardiologist at Kansas City, for examination. On that occasion, Dr. McCallister made a finding that there was an abnormal bulge on the posterior aspect of Vogel's heart which he thought was an aneurism which could be due to trauma or injury. Vogel returned to Dr. McCallister in September of 1974, at which time a diagnosis was made of a congenital abnormal arrangement of one of the pulmonary veins. The normal function of this vein is to carry the blood from the right side of the heart to the lungs to be oxygenated and then return it to the left side of the heart to be circulated. It was Dr. McCallister's opinion that the pulmonary vein in Vogel's case returns the blood it carries back to the *right* side of the heart (instead of the left) and thus back to the lung rather than into his body's general circulation system. McCallister estimated that this abnormality involved 20% of Vogel's blood circulation. In his second examination, Dr. McCallister revised his original opinion regarding the bulge in the heart (as an aneurism) and concluded it was due to a congenital abnormality of a heart muscle.

Dr. McCallister did not testify in person but his report to Dr. Stallard dated September 12, 1974 was introduced by Hall-Deere into evidence, without objection. Following his September, 1974 examination, he reported: "The relationship of this problem to the accident would seem to be most unlikely". He added, "At the present time I do feel that Mr. Vogel is disabled for more than mild physical activities and do not feel that he could perform moderate to heavy physi-

cal work." Further, Dr. McCallister's report states that Vogel "definitely has evidence of a cardiomyopathy-myocardial disease of indeterminate etiology" and that this condition together with the anomalous pulmonary vein "certainly would compromise patient's cardiac function and account for his symptomatology", yet he attempts to give no medical explanation or opinion accounting for the dramatic onset of the cardiac symptoms contemporaneous with the violent trauma of March 11, 1972, followed by the admitted traumatic results as above described.

Vogel continued under the care of Dr. Stallard, who testified at the hearing on February 21, 1975. After relating the history of the medical treatment given Vogel, the hospitalization and consultations secured, he stated that Vogel was still under his care and testified:

"Q. Concerning the facts of this accident, and, of course, your treatment to (sic) the medical history and so forth, is it your opinion that Mr. Vogel could return to his past employment?

A. No, I don't think he can.

Q. He has never been in condition to return to work since he has been under the care of the Clinic, along with Dr. Butler and yourself?

A. No, he hasn't."

Further, he stated:

"Q. Then I believe I understand you have no idea at the moment or you are unable to determine when, if at anytime, Mr. Vogel could return to work?

A. I think he could return to mild work at any time; moderate or heavy work, no.

Q. Work like he was doing?

A. I don't think he could ever return to that."

On direct examination, Dr. Stallard further testified:

"Q. With reasonable medical certainty, would you say that the condition he suffers from at the present time was a result of the accident of March 11, 1972?

A. Well, I have always found that a hard one for me to answer and yet his symptoms date from that moment. Prior to that time he had no physical problems that I know about. He was a good worker to the best of my information and had a pretty clear bill of health previous to that time. Since that time he has continued to complain with being short of breath with very little exertion and very little strength and energy."

On redirect examination:

"Q. And is it your opinion that the severe blow and (sic) something weighing about twenty-four hundred pounds could have aggravated that congenital condition?

A. Well, I find that a very hard question to answer and I don't think I have a hard and fast answer. *This is the way it seems to me as I mentioned earlier.* He was to all intents and purposes and appearances in good health prior to the accident and has not been since. He did have pulmonary embolism or clotting to the lung, which resulted in the accumulation of bloody fluid and so forth. *It seems to me reasonable that all those events added enough of an extra burden to his heart that it no longer functioned as good as it did previous to that time and probably the reason is he did not have a completely normal heart to begin with.* Perhaps if his heart was entirely normal to begin with, he would have tolerated it much better." (Emphasis supplied)

On cross-examination, Dr. Stallard testified with reference to Dr. McCallister's report:

"Q. And those tests indicate that the present condition of his heart were (sic) not related to the accident of March 11, 1972, did they not?

A. *That is Dr. McCallister's opinion.*" (Emphasis supplied)

The record on this appeal contains a standard form of Surgeon's Report filed with the Commission on June 23, 1975, dated May 9, 1975, signed by Dr. Stallard, in which the following appears:

"7. Will the injury result in (a) Permanent defect? *Yes.* If so, what? *Presently and probably permanently. So far as previous type of work that he was doing is concerned.*"

Vogel in his testimony stated that he would be 56 years of age on May 18, 1975, and related his background and work experience as a farmer, employee in the meat packing business and with Hall, as above recounted. He stated the facts of the accident and testified that the blow to his chest was of sufficient force to cut a coin purse and bend a metal car key therein, which purse he was carrying in a chest level pocket of his bib overalls. He recounted his medical treatment following the accident, as summarized above.

Vogel testified that he had always earned his living by hard labor; had always been in good health; had no prior disabilities; and had no previous heart trouble. He stated that since his injury he just "wears out" if he tries to do anything; even walking wears him out and makes him short-winded or short of breath so that he has to sit down and rest; trying to shell some pecans at a table produced the same result the day before the hearing; around the house he can only get breakfast or help with the dishes; at Christmastime, he tried to make two toy railroad cars, wore out and had to rest for three or four hours; he could not help his wife much with a small vegetable garden; now "I just can't do anything I want to do"; trips to the shopping center wear him out so he has to rest; and sometimes he is dizzy until he "gets rested up".

Mrs. Vogel, the claimant's wife, stated that Vogel tries to do things, has the desire to do things, but "goes to pieces" and isn't able to carry them out. Since he recovered from the initial blood clot and lung conditions, she has noticed no improvement in his general condition, and in her opinion, he hasn't been able to do a day's work. He is still under the care of Dr. Stallard of the Clinic.

Hall-Deere introduced no evidence except certain exhibits, including Dr. McCallister's report to Dr. Stallard, introduced during cross-examination of claimant and Dr. Stallard.

Section 287.020(7) RSMo 1969, provides as follows:

"Definitions

*     *     *     *     *     *

(7) The term 'total disability' as used in this chapter shall mean inability to return to any employment and not merely mean inability to return to the employment in which the employee was engaged at the time of the accident."

This subsection was part of the original Workmen's Compensation Act, Laws 1925, p. 381, Section 7(e).

Our courts have held that the phrase "inability to return to any employment", as used in this statute, means that the person referred to is unable to perform the usual duties of the employment under consideration, in the manner that such duties are customarily performed by the average person engaged in such employment. *Kinyon v. Kinyon*, 230 Mo.App. 623, 71 S.W.2d 78, 82[5] (1934); *Kateman v. Zink*, 238 Mo.App. 253, 180 S.W.2d 253, 257–258[3, 4] (1944). In the case of *Groce v. Pyle*, 315 S.W.2d 482 (Mo.App.1958), this court after stating the above rule of construction, said, l. c. 490[6]:

"* * * Further, the terms 'any employment' mean any reasonable or normal employment or occupation as those words are generally understood, and it is not necessary that the injured employee be or remain completely inactive and inert in order to meet the statutory definition of one unable to return to any employment. * * * The question is could any employer of labor, in the usual and ordinary course of business, seeking persons to perform the duties of an employment in the usual and customary way, reasonably be expected to employ him in his present physical condition, and could he reasonably be expected to perform the duties of the employment?"

The *Groce* court cited and followed the earlier case of *Maddux v. Kansas City Public Service Co.*, 111 S.W.2d 208 (Mo.App. 1937), where the court in resolving the same problem stated, l. c. 214[3]:

" * * * Claimant might be able to sit on the street and sell peanuts, pencils or shoe strings. There is ample evidence from which the commission could have found that he could not carry on any normal dignified occupation. * * * "

■ In this case, considering the limited education of Vogel, his past history of occupations involving hard manual labor and his present disabilities, the conclusion is reached that there was substantial and competent evidence before the Commission to support its finding of total permanent disability. The first point urged by appellants Hall-Deere is ruled against them.

At the outset of consideration of Hall-Deere's second point, dealing with medical causation, it should be noted that the testimony and findings by Dr. McCallister of a congenital heart defect affecting Vogel's circulatory system is not disputed.

■ However, it is well-settled law in this state that prior existing physical handicaps or deficiencies do not prevent an award for compensation where the other standards of the Act are met. *Federal Mutual Insurance Company v. Carpenter*, 371 S.W.2d 955, 957[3] (Mo.1963); *Gill v. Massman Construction Co.*, 458 S.W.2d 878, 882–883[6, 7] (Mo.App.1970).

In *Cowick v. Gibbs Beauty Supplies*, 430 S.W.2d 626 (Mo.App.1968), a case where an employee died following an automobile accident, which in itself produced no external evidence of trauma, recovery under the compensation law was allowed for his widow and children. An autopsy was performed which disclosed evidence of an old heart infarction and hardening of the arteries which resulted in narrowing of the openings through which the blood reaches the heart and a resulting lack of adequate blood supply. The autopsy pathologist testified that the cause of death was ventricular fibrillation which would further add to the lack of blood supply and "one does not

need to look further" than the emotional stress of the accident and the following walk in the snow as significant aggravating factors to precipitate the fatal ventricular fibrillation which, the doctor stated, "I presume has to be the mechanism of death".

In affirming an award of compensation to the widow and children, the court said, l. c. 630[5]:

"If an accident results in aggravating or accelerating a pre-existing disease or condition, it is compensable. *Mashburn v. Chevrolet-Kansas City Division*, 397 S.W.2d 23, 29 (Mo.App.). There is evidence here from which the Commission could have found that the accident activated the condition which caused death to occur at the time it happened; that it was an efficient, exciting, superinducing, concurring, or contributory cause of death. *Wilson v. Emery Bird Thayer Company*, 403 S.W.2d 953, 958 (Mo.App.)"

■ In compensation proceedings the testimony of any medical witness should be appraised and weighed in its entirety, *Slider v. Brown Shoe Company*, 308 S.W.2d 306, 309[3] (Mo.App.1957) and cases cited therein. A fair appraisal of the testimony of Dr. Stallard in this case and his report to the Commission dated May 9, 1975, leads to the conclusion that, considering Vogel's lack of previous difficulties or handicap from his congenital heart condition, it was the doctor's opinion that there was in fact medical causation between the trauma sustained by Vogel on March 11, 1972 and his present physical condition. In this regard, his sworn testimony and his statements in the aforementioned report, even though in apparent conflict with the opinion of Dr. McCallister, were accepted by the Commission. This was a finding of fact, particularly for the determination of the Commission. *Groce v. Pyle*, supra, at l. c. 490[5]. Such acceptance as between conflicting medical opinions or conclusions cannot be here disturbed unless the conclusions accepted were against the overwhelming weight of the evidence. *Stegall v. St. Joseph Lead Co.*, 465 S.W.2d 855, 861[3] (Mo.App.1971);

*Franklin v. St. Louis Independent Packing Company,* 360 S.W.2d 350, 355[4] (Mo.App. 1962).

The testimony of Dr. Stallard coupled with that of Vogel and his wife constituted competent and substantial evidence from which the Commission could reasonably find (as it did) that claimant's present condition was caused by the accident of March 11, 1972. *Slider v. Brown Shoe Company,* supra. Hall-Deere's second point is ruled against them.

The judgment of the Circuit Court affirming the final award of the Industrial Commission is affirmed.

All concur.