Stanley KOWALSKI,
Plaintiff-Respondent,

v.

M–G METALS AND SALES, INC. and
United States Fidelity & Guaranty Company, Defendants-Respondents,

and

Melvin E. Carnahan, Treasurer of Missouri, Custodian of the Second Injury Fund, Defendant-Appellant.

No. 12460.

Missouri Court of Appeals,
Southern District,
Division Two.

March 17, 1982.

Motion for Rehearing Overruled and to Transfer to
Supreme Court Denied April 6, 1982.

Application to Transfer Denied
May 17, 1982.

Jack Randall, St. Louis, for plaintiff-respondent.

Adrian DeYong, Jo A. Story Schweiss, Luke & Cunliff, St. Louis, for defendants-respondents.

John D. Ashcroft, Atty. Gen., Carroll J. McBride, Asst. Atty. Gen., Jefferson City, for defendant-appellant.

PREWITT, Presiding Judge.

The custodian of the Second Injury Fund appeals from an order of the Circuit Court of Pulaski County affirming a final workmen's compensation award of the Labor and Industrial Relations Commission. In his first three points he contends that there was insufficient "competent evidence in the record to warrant the Commission" in (1) "finding that the respondent had a pre-existing permanent partial disability"; (2) "finding that respondent is permanently and totally disabled"; and (3) "finding that if the respondent had a permanent total disability it resulted from the combination of a pre-existing heart disability and disability from the March 14, 1977 injury." In his last point he contends that "the Commission acted without and in excess of its powers in finding that the respondent is permanently and totally disabled and that the Second Injury Fund owes $15.00 per week for 100 weeks for disability sustained for a period prior to completion of payment of compensation by the Employer."

Plaintiff had worked as a pipefitter for approximately 25 years before suffering a back injury on March 14, 1977. He filed a claim against his employer, its insurer and the Second Injury Fund, alleging prior disability because of a heart condition. The commission found that he suffered from preexisting disability due to his heart condition; that his back injury resulted in a 25% permanent disability to his body as a whole; and that he is permanently and totally disabled as a result of a combination of the heart condition and the back injury.

The commission ordered that the employer and insurer pay $95 per week for 40 weeks for temporary total disability, pay $80 per week for 100 weeks for permanent partial disability and pay certain medical expenses. The Second Injury Fund was ordered to pay $15 per week for the 100 weeks that plaintiff receives permanent partial disability benefits from the employer and insurer, and thereafter pay $95 per week for life for permanent total disability.

The provisions of the award in question here were initially entered by

Chief Administrative Law Judge James H. Wesley. The facts on which the award was based were carefully detailed by Judge Wesley and his findings were adopted by the commission. Our review, of course, is of the commission's award. *Wilhite v. Hurd*, 411 S.W.2d 72, 76 (Mo.1967). We modify an award of the commission when it is not supported by substantial evidence or when it is clearly contrary to the overwhelming weight of the evidence. *Malcom v. La-Z-Boy Midwest Chair Company*, 618 S.W.2d 725, 726 (Mo.App.1981). The commission judges the credibility of witnesses and we do not substitute our view of the facts for those found by the commission. Id. With those guidelines in mind, we consider appellant's first point.

A prerequisite for recovery from the Second Injury Fund under § 287.220, RSMo 1969, is a "previous disability". It is not necessary under § 287.220 that the previous disability be due to an injury, but it must be disability to work, that is "industrial disability" or loss of earning capacity. *Hettenhausen v. Gene Jantzen Chevrolet*, 499 S.W.2d 785, 786 (Mo.1973); *Wilhite v. Hurd*, supra, 411 S.W.2d at 77.

Plaintiff has suffered from heart problems since 1964. He testified that before his back injury he was able to do his job and "everything that other pipe fitters did". However, there was evidence that because of plaintiff's heart condition his physician thought, and advised plaintiff before his back injury, that he should not do this type of work. The doctor stated that on April 26, 1976, he considered plaintiff "incapacitated" for this type work. Again on the 25th of August, 1976, he advised plaintiff to "quit hard work". The doctor said that when he saw plaintiff on March 3, 1977, plaintiff's condition, as to the type of work he should do, "was relatively unchanged". The doctor was of the same opinion on March 30, 1977. The doctor testified that while plaintiff could physically do manual labor before his back injury, it was not advisable because of the risk of heart prob-

lems, including death. There was evidence that before the back injury plaintiff had been hospitalized "six or seven times" as a result of chest pains due to his heart problems; that he was off work a period of several weeks each time and that because of his heart condition he was taking medication.

The prior disability must be such as to partially disable the claimant from work or to impede his labors. *Meilves v. Morris*, 422 S.W.2d 335, 338 (Mo.1968). Infirmities which cause an employee to do less work or to work only part time may be industrially disabling. Id. That plaintiff could do the job does not establish that he was a completely healthy person with no disability which impeded his labor or earning power prior to the injury. *Jockel v. Robinson*, 484 S.W.2d 227, 230–231 (Mo. 1972). Plaintiff's heart condition existed at the time of his back injury. His heart condition was frequently disabling; it made his work dangerous to his health, and caused him to lose work. We believe this constituted sufficient competent evidence to support the commission's finding that plaintiff suffered an industrial disability. See *Jockel v. Robinson*, supra, 484 S.W.2d at 231–232; *Bone v. Daniel Hamm Drayage Company*, 449 S.W.2d 169, 173 (Mo.1970). Point one is denied.

Appellant contends in his second point that there was not sufficient competent evidence to warrant the commission finding that plaintiff was permanently and totally disabled. Section 287.020(7), RSMo Supp. 1975, defines total disability as "inability to return to any employment and not merely ... inability to return to the employment in which the employee was engaged at the time of the accident." Appellant contends plaintiff is employable, pointing out that he has not sought rehabilitation; he trims bushes and works in his garden and has driven an automobile. While those are matters to be considered, and we assume the commission did consider them, we do not believe they are conclusive and establish that plaintiff is not totally disabled.

■ Missouri court decisions interpreting that statute state that "inability to return to any employment" means that the employee is unable to perform the usual duties of the employment under consideration in the manner that such duties are customarily performed by the average person engaged in such employment. *Vogel v. Hall Implement Co.*, 551 S.W.2d 922, 926 (Mo.App. 1977); *Groce v. Pyle*, 315 S.W.2d 482, 490 (Mo.App.1958). See also *Maddux v. Kansas City Public Service Co.*, 111 S.W.2d 208, 212 (Mo.App.1937). Any employment means any reasonable or normal employment or occupation; it is not necessary that the employee be completely inactive or inert in order to meet this statutory definition. *Vogel v. Hall Implement Co.*, supra, 551 S.W.2d at 926, *Groce v. Pyle*, supra, 315 S.W.2d at 490. Apparently the central question is whether any employer in the usual course of business would reasonably be expected to employ the employee in his present physical condition. *Vogel v. Hall Implement Co.*, supra, 551 S.W.2d at 926, *Groce v. Pyle*, supra, 315 S.W.2d at 490.

■ Plaintiff is 65 years old. He has a ninth grade education. He tried to return to his previous job but was not physically able to do the work. His previous employment has always involved strenuous labor. Plaintiff testified that he has back pain when he is gardening or mowing the lawn; that his bending is "very limited"; that he is "afraid" to try much lifting; that he has difficulty climbing; and that he has pain in his back when walking very much or when he stands for a long period of time. There was medical testimony that plaintiff was now "unable to compete in the open labor market and" was "permanently and totally disabled"; that he could not return to work as a pipefitter; that he "will remain permanently and totally disabled as it would relate to that type of work which he has done for many years and which he was accustomed to"; and that, at "his age, it would be highly unlikely that he could be retrained in a new vocation that would permit

him to be self supporting and financially independent."

With his heart condition and back injury, we think it unlikely that anyone could be expected to employ plaintiff. The only experience he has is in jobs requiring strenuous physical labor and there is abundant evidence that he can no longer do that type of work. At his age it would be unusual for an employer to consider plaintiff for another type of job. We conclude that there was substantial and competent evidence before the commission to support its finding of total permanent disability. Point two is denied.

Appellant in his third point contends that there was not sufficient evidence for the commission to find that plaintiff's permanent total disability resulted from a combination of the preexisting heart disability and the back injury. Appellant contends that if plaintiff was permanently and totally disabled, it was solely because of his back injury as his heart ailment had never prevented him from working.

■ A physician testified "that the combination of that cardiovascular condition superimposed upon the condition of the back" made plaintiff totally and permanently disabled. Plaintiff might have been employable if he suffered only from the back condition. The possibility of his being hired becomes more remote because of the heart condition. Based on the facts here we believe that the commission's finding that the back and heart conditions combined to cause permanent total disability was supported by competent evidence. Point three is denied.

For his fourth point, appellant contends that the commission erred in ordering the custodian of the Second Injury Fund to pay $15 per week for one hundred weeks. This supplemented the $80 per week that the employer and insurer were ordered to pay for one hundred weeks for permanent partial disability due to the back injury, thus bringing plaintiff's compensation for this period to the $95 per week maximum paid for permanent total disability. See § 287.-200, RSMo Supp.1975. Appellant contends

that this was erroneous because § 287.220, RSMo 1969, does not provide for payments from the Second Injury Fund until "after the completion of payment of the compensation by the employer". Appellant does not complain about the time that payment was ordered; he contends that there is no obligation for any payment by the Second Injury Fund to supplement the amount of compensation during a period when the employer is paying compensation. Section 287.220 provides in part:

"If the previous disability or disabilities, whether from compensable injury or otherwise, and the last injury together result in total and permanent disability, the employer at the time of the last injury shall be liable only for the disability resulting from the last injury considered alone and of itself; except that if the compensation for which the employer at the time of the last injury is liable, is less than the compensation provided in this chapter for permanent total disability then in addition to the compensation for which the employer is liable and after the completion of payment of the compensation by the employer, the employee shall be paid the remainder of the compensation that would be due for permanent total disability under section 287.200 out of a special fund known as the second injury fund . . . ."

In interpreting The Workmen's Compensation Law we resolve all doubts in favor of the employee. *Baer v. City of Brookfield*, 366 S.W.2d 469, 471 (Mo.App. 1963). See also *Greer v. Department of Liquor Control*, 592 S.W.2d 188, 193 (Mo. App.1979). We interpret the "after" clause to refer to the time of payment, and as not requiring the Second Injury Fund to make any payment until the employer has completed its payments. However, we hold that the trustee of the fund is not relieved from paying the difference between what is to be paid by the employer and what the employee should receive for permanent total disability.

If there was no obligation for the Second Injury Fund to make up this difference then the employee would not receive "the remainder of the compensation that would

be due for permanent total disability". § 287.200. He would receive less than someone permanently and totally disabled as a result of a single compensable disability. If that had been the intention of the legislature, it would have been simple to have provided that following the employer's payment the Second Injury Fund would thereafter commence paying compensation at the rate provided in § 287.200. We hold that the Second Injury Fund was correctly ordered to pay $1500 to plaintiff. Considering the language of the statute and the frequent and various amendments to The Workmen's (now Workers') Compensation Law, we cannot discern the intent of the legislature, but reach this result by resolving our doubts in favor of the employee. Point four is denied.

The judgment is affirmed.

MAUS, C. J., and HOGAN and BILLINGS, JJ., concur.