**Harley D. CRUM, Appellant,**

v.

**SACHS ELECTRIC and Aetna Casualty and Surety, Respondents.**

**No. WD 40485.**

Missouri Court of Appeals, Western District.

March 7, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 1989.

D. James Mariea, Fulton, for appellant.

Douglas L. Van Camp, Jefferson City, for respondents.

Before COVINGTON, Special Judge, and NUGENT and GAITAN, JJ.

GAITAN, Judge.

This is a worker's compensation case. Harley Crum, appellant, appeals from the decision of the Labor and Industrial Relations Commission which affirmed the decision of the administrative law judge (ALJ). The Commission determined that appellant has a permanent partial disability of 65 percent rated for the body as a whole, referable to the low back and right hip. Appellant seeks an award of permanent total disability. The Commission was divided in its decision with two commissioners affirming the ALJ's decision, and one commissioner dissenting in a separate opinion holding the appellant to be unemployable due to permanent total disability. We affirm the Commission's decision.

On February 8, 1982, appellant was employed by Sachs Electric Company, doing electrical construction work at the Thomas Hill power plant. Appellant climbed a 14-foot ladder to install a fixture after being told that the electrical wires were not ener-

gized. However, the wires were energized with high voltage which knocked appellant off the ladder, causing him to fall to a concrete floor. Appellant first landed with his right foot hitting a pile of pipes and his left foot hitting the concrete floor, then he fell on his back.

From February 17, 1982 to the present appellant has been treated by doctors McElroy and Russell at the Columbia Orthopedic Group in Columbia, Missouri. Appellant originally saw the company doctor on February 9, who took some x-rays. On February 14, appellant went to Dr. Klingingsmith in Fulton, Missouri, who is a chiropractor. Appellant saw Dr. McElroy on February 17, and had x-rays and a CAT scan done. Appellant was diagnosed as having a fracture of the superior plate of the third lumbar disc and a fracture of twelfth thoracic vertebra. Appellant was hospitalized for approximately ten (10) days, and continued with bedrest until July 17, 1982. He worked at the Thomas Hill facility from July 17, 1982 to May 22, 1983 on a regular basis. Appellant was hospitalized on May 22, 1983, where a discogram confirmed the presence of a herniated disc at the L4–5 level. Chymopapain, an enzyme, was injected in an effort to dissolve the disc. Surgery was performed between May 22–25, and appellant remained home until September 19, 1983. He then returned to the Thomas Hill facility working for Great Northern, another electrical contractor, running conduit until October 24, 1983. Appellant was readmitted to the hospital on December 4, 1983, when a total decompression laminectomy of both L4 and L5 lamina was performed with a fusion from L–4 to the sacrum. Appellant did not work from December 1983 until he was released for light work on May 21, 1985. He attempted to return to work, but was unable because he had a recurrence of back pain. Appellant resumed duties as an electrician working at a construction site in Georgia from September 17, 1985 to March 17, 1986. During that time period he had to return to Columbia to see Dr. Russell three times. After the third visit, he was unable to return to the job because Dr. Russell said that his back had deteriorated.

Appellant took six (6) weeks rest and then began working for Meade Electric on September 3, 1986. He quit because he could not do the work and has not worked since October 31, 1986.

An examination by Dr. Russell in 1985 showed that appellant had lost 58 percent of normal back motion in forward bending, side bending and extension. Appellant also lost 50 percent of upper hip and thigh musculature and 75 percent of muscle strength in his lower back. Dr. Russell testified that appellant could do work that was not heavy and did not involve bending or lifting. Appellant can sit for an hour at a time and do work at a desk so long as he can get up and move around every 45 minutes or so. Dr. Russell recommended limiting rides in vehicles to one (1) hour. Appellant can climb a ladder, but Dr. Russell would not recommend climbing because surgery caused the nerves to his legs to be weak and his legs could buckle. Dr. Russell also testified that appellant's condition was not going to improve, but would likely worsen with age. In Dr. Russell's medical opinion, appellant exhibited permanent partial impairment of 65 percent of his body as a whole.

Appellant was born June 7, 1930, and was 51 years old as of the date of the injury. He has been educated up to the sixth or eighth grade. Appellant has essentially been in the electrical trade since 1954. He cannot write the English language and has difficulty reading. Appellant has looked for janitorial work but has been unsuccessful up to the time of the hearing.

The issue to be decided on appeal is whether the Commission's award is supported by competent and substantial evidence based on the record as a whole. The award by the Commission may only be modified if "it is not supported by substantial evidence or when it is clearly contrary to the overwhelming weight of the evidence." *Kowalski v. M–G Metals and Sales, Inc.,* 631 S.W.2d 919, 921 (Mo.App. 1982); *Matthews v. Roadway Express, Inc.,* 660 S.W.2d 768, 769 (Mo.App.1983);

and *Vogel v. Hall Implement Company,* 551 S.W.2d 922, 923 (Mo.App.1977).

The findings of physical impairment by the treating physician, as well as the appellant's age, education and job skills were all before the ALJ and the Commission before their respective opinions were rendered. Thus, this Court must review the Commission's award, the evidence and all legitimate inferences in the light most favorable to the award. *Matthews, supra* at 769. The Court of Appeals may not substitute its judgment or view of the facts for those found by the Commission. *Vogel, supra* at 923. However unfortunate it may be, this is true even if this Court would have been persuaded to a different initial conclusion. *Id.* The only obligation of this reviewing Court is to "determine from the whole record whether the Commission could reasonably have made its findings and award." *Id.* (citations omitted).

Appellant cites *Kowalski,* 631 S.W.2d 919 (Mo.App.1982) as being a case similar to the case at bar. However, in that case Mr. Kowalski suffered from a heart condition which, when coupled with his compensable back injury, resulted in any type of work being dangerous to his health. Unlike the case at bar, the medical testimony was "that the combination of that cardiovascular condition superimposed upon the condition of the back made plaintiff totally and permanently disabled." *Id.* at 922. Such medical testimony is absent from the present case thereby distinguishing the two factual situations.

■ The definition of total disability is the "inability to return to any employment and not merely ... [the] inability to return to the employment in which the employee was engaged at the time of the accident." *Kowalski, supra* at 921. (quoting § 287.020(7), RSMo Supp.1975; *see also* § 287.020.7, RSMo 1986. The terms "any employment" mean "any reasonable or normal employment or occupation." *Kowalski, supra* at 922. (citing *Vogel v. Hall Implement Co.,* 551 S.W.2d 922, 926 (Mo.App.1977) and *Groce v. Pyle,* 315 S.W.2d 482, 490 (Mo.App.1958)). The central question to the issue of total disability is "whether any employer in the usual course of business would reasonably be expected to employ the employee in his present physical condition." *Id.* The evidence in the case at bar indicates that appellant has been able to work on several occasions in the same type of employment since he sustained his injury. Additionally, appellant himself testified that he felt that he is qualified to obtain employment as a janitor. Therefore, a finding of permanent total disability would be unjustified.

It is the duty of the Commission, not the reviewing court, to review the entire record, determine the credibility of the witnesses, decide the weight to be given their testimony, resolve conflicts therein, and reach its own conclusion. *McAdams v. Seven–Up Bottling Works,* 429 S.W.2d 284, 287 (Mo.App.1968). In the case at bar, the Commission heard the testimony of the treating physician who was intimately familiar with all of the facts and circumstances of the appellant. The physician himself testified that appellant had a 65 percent permanent partial disability as rated for the body as a whole. Additionally, appellant testified that he had been employed on several occasions since his injury. This testimony infers that employers have in fact employed appellant in spite of his physical impairment, age, job skill and education. Therefore, the findings of the Commission was based upon substantial, competent evidence, which is not clearly contrary to the weight of evidence.

The judgment of the Commission is affirmed.

NUGENT, J., dissents in separate opinion.

NUGENT, Judge, dissenting.

I respectfully dissent.

The factual issue in this case is whether Harley Crum, who had the burden of proof, established by competent and substantial evidence his right to an award of permanent and total disability.

Ordinarily, in a workers' compensation case the appellate court must affirm an award of the Labor and Industrial Rela-

tions Commission if it is supported by competent and substantial evidence based on the record as a whole. But where the facts are not disputed, the award that ought to be made becomes a question of law, and the commission's ruling is not binding on the appellate court. *Ikerman v. Koch,* 580 S.W.2d 273, 278 (Mo.1979) (en banc). Facts are not disputed where the evidence is not in conflict. In such cases the commission may not ignore competent and substantial evidence of witnesses whose testimony is not shown by the record to have been impeached or disbelieved and then base its award on conjecture or on personal opinion without the support of sufficient competent evidence. *Merriman v. Ben Gutman Truck Service, Inc.,* 392 S.W.2d 292, 297 (Mo.1965); *Lunn v. Columbian Steel Tank Co.,* 364 Mo. 1241, 275 S.W.2d 298, 301 (1955); *Kristanik v. Chevrolet Motor Co.,* 335 Mo. 60, 70 S.W.2d 890, 893–94 (1934). Review of a ruling entered upon a record of undisputed facts does not invade the commission's statutory fact-finding role because in those circumstances the court need make no finding of fact. It merely applies the law to the facts, reviewing a question of law. *Id.* 70 S.W.2d at 893. Moreover, where the facts conceded on the record as a matter of law call for reversal of a judgment for the defendant and entry of judgment for the plaintiff, the appellate court should enter that judgment. *Id.* 70 S.W.2d at 894. For like holdings, *see May v. U.B.C. Marketing,* 719 S.W.2d 43, 44 (Mo.App.1986); *Page v. Green,* 686 S.W.2d 528, 530 (Mo.App.1985); *Palm v. Southwest Missouri Wholesale Liquor Co.,* 176 S.W.2d 528, 532 (Mo.App.1943); and *Stepaneck v. Mark Twain Hotel,* 104 S.W.2d 761, 766 (Mo.App.1937). *Cf. Missouri Church of Scientology v. State Tax Commission,* 560 S.W.2d 837, 843 (Mo.1977) (en banc), and *Stevinson v. Labor and Industrial Relations Commission of Missouri,* 654 S.W.2d 373, 374 (Mo.App.1983).

In Harley Crum's case, the single question was the extent of his disability. He presented the only evidence on that issue: his own testimony, his wife's testimony, and the deposition of the treating physician. The employer and its insurer chose not to contest that evidence and now contend that the doctor's sixty-five percent rating by itself supports the commission's award. They rely upon the notion that the doctor's rating of the claimant's disability binds the commission.

The undisputed, uncontradicted and unimpeached evidence in this case from claimant, his wife and his doctor reveals the following:

(1) Mr. Crum suffered his injury on February 8, 1982, and on February 17 he went to the hospital for ten days.

(2) He returned to work on July 17 and worked until May 22, 1983, a period of ten months.

(3) On May 22–25, 1983, he underwent "needle" surgery in the hospital.

(4) He returned to work on September 19, 1983, but after one month left that work on October 24, 1983.

(5) He returned to the hospital on November 6, 1983, for a myelogram.

(6) On December 4, 1983, he returned to the hospital for surgery—a laminectomy and spinal fusion. He went home on December 13.

(7) On May 21, 1985, he attempted to return to work but apparently left that same day because of the pain.

(8) On September 17, 1985, the doctor released him to work on a trial basis. This time, despite continuing misery, he managed to continue working as an electrician for six months until March 17, 1986, at which time his doctor told him that his back was deteriorating, that he could not return to work and that he should rest for six weeks.

(9) He returned to work on September 3, 1986, but after two months he quit on October 31, because he could not do the work on account of the pain in his back, hip and leg.

From the time of his injury in February, 1982, until the hearing before the administrative law judge in February, 1987, Mr. Crum was able to work only nineteen out of sixty months. In the last forty-five months he worked only nine. Every at-

tempt to work was sooner or later a painful failure. By the time of the hearing, he was fifty-six years old. He is now fifty-eight.

Mr. Crum testified that he hurts even when he sits and that he can stand for three or four hours but in one position for only ten or fifteen minutes. He also testified that the jobs he held since his injury were just trial jobs "for Dr. Russell," that is, to see if he could return to his regular occupation. He knows of no job in the electrical field that would permit him to work without bending or pulling (wire) or climbing ladders. Finally, he testified that he has never worked as a janitor and does not know whether he can, although he would like to try.

The only expert medical testimony given in this case came from Mr. Crum's physician, Garth Russell, M.D. He found in Mr. Crum a fairly well-motivated person who had made every effort to rehabilitate himself and who becomes frustrated that he cannot work; he wants to work. Many people less disabled than Mr. Crum do not work.

Dr. Russell testified that tests in late 1985 showed that he had lost fifty-eight percent of normal forward bending, side bending and extension motion. He had lost fifty percent of hip thigh musculature and seventy-five percent of the muscle strength in his low back. His symptoms affect his ability to bend and lift and to do physical work that requires bending and lifting. His back is weak and very stiff, and he had lost sixty percent of the range of motion. He can do no work that requires bending or work involving lifting over thirty pounds. Repetitive lifting would cause muscle spasm and pain in the back. If claimant sits or stands for more than an hour, he will suffer muscle spasm and pain, unless he is allowed to move around every forty-five minutes or so. Too much driving or riding would affect him the same way. Mr. Crum could probably climb a ladder, but Dr. Russell would not advise it since his weakened nerves might cause his legs to buckle and cause him to fall.

Mr. Crum can do light work, Dr. Russell testified, but would have difficulty with long hours, cold weather, pulling wire, and strenuous work. He could not tolerate the ten-hour days he had to work in his last electrician's job in Georgia. Finally, Dr. Russell testified that Mr. Crum's condition is progressing with degenerative changes that will likely worsen. The doctor rated Mr. Crum on August 31, 1986, as suffering a permanent partial disability to the extent of sixty-five percent of the body as a whole. In every material respect, Dr. Russell's testiomny corroborated the testimony of Mr. Crum and his wife.

Eugenia Crum, claimant's wife, testified that at the time he last worked (September and October, 1986), he dragged his right foot, tripped over everything, and had trouble getting out of bed, putting on and taking off his boots. He quit his last job because he could not do the work.

At the time of the 1987 hearing, Mrs. Crum testified that her husband was unable to do household maintenance—he could not change a faucet, do household painting or mow the lawn. He was extremely nervous and still unable to bend to put on or pull off his boots or to pick up something from the floor and was dragging his right leg. He had difficulty driving or riding in a car and had to limit his time in a vehicle. He was also having difficulty climbing into or out of a bath tub.

Mrs. Crum also spoke of her husband's literacy. He can read and write "very poorly." He will read the headlines, but he asks her to read newspaper articles to him, and he never writes letters. Mr. Crum himself testified that he went only to the sixth grade in school. His training to be an electrician did not involve reading and writing, but he learned to read certain blueprints. His wife handles the checkbook and all the paperwork for the family. During the hearing before the administrative law judge, he could not spell the name of one of his doctors without looking at a note his wife had written for him and had gone over with him before trial. When he tried to refresh his memory about his work history by referring to the notes, he could not read and understand them. His last job

was with Meade Electric, which he misspelled M-E-A-D.

The question whether the claimant is totally disabled within the meaning of the workers' compensation law is not simply a medical question. The test for permanent total disability is whether, given the claimant's total situation and condition, he is competent to compete in the open labor market. This test measures the worker's prospects for returning to employment. *Patchin v. National Super Markets, Inc.*, 738 S.W.2d 166 (Mo.App.1987); *Laturno v. Carnahan*, 640 S.W.2d 470 (Mo.App.1982); *Groce v. Pyle*, 315 S.W.2d 482 (Mo.App. 1958).

The claimant always has the burden to prove all elements of his claim. *Meilves v. Morris*, 422 S.W.2d 335, 339 (Mo.1968); *Merriman v. Ben Gutman Truck Service, Inc., supra*, 392 S.W.2d at 296. In this case, the employer and insurer contested only the extent of Mr. Crum's disability. Consequently, he had the burden only to prove that he is permanently and totally disabled, that is, unable to compete on the open labor market for work. *Patchin v. National Super Markets, Inc., supra*, 738 S.W.2d at 167. He need not have shown that he was "completely inactive or inert"; the central question was whether in the ordinary course of business any employer would reasonably be expected to hire him in his present physical condition reasonably expecting him to perform the work for which he is hired. *Kowalski v. M-G Metals and Sales, Inc.*, 631 S.W.2d 919, 922 (Mo.App.1982), and *Groce v. Pyle, supra*, 315 S.W.2d at 490. Nor was Mr. Crum required to prove the extent of his disability beyond any doubt. A workers' compensation claimant has the burden to prove the essential elements of his claim on the basis of a reasonable probability. *Davies v. Carter Carburetor, Division ACF Industries, Inc.*, 429 S.W.2d 738, 749 (Mo.1968); *Tate v. Southwestern Bell Telephone Co.*, 715 S.W.2d 326, 329 (Mo.App.1986); *Tibbs v. Rowe Furniture Corp.*, 691 S.W.2d 410, 413 (Mo.App.1985). In this context, "probable" means that the claim appears to be founded in reason and experience that inclines the mind to believe but leaves room for doubt. *Ellis v. Western Electric Co.*, 664 S.W.2d 639, 642 (Mo.App.1984), and *Barr v. Vickers, Inc.*, 648 S.W.2d 577, 580 (Mo.App.1983).

Mr. Crum unquestionably met his burden, adducing unimpeached evidence of his inability to compete on the open labor market for any kind of work. The nearest thing to evidence of his possible ability to get and hold a job came on respondents' attempts on cross-examination to impeach his testimony. The best that counsel was able to wring from claimant was that he "feels" he could perform as a janitor, that he wants to try. He never before had been a janitor. Nothing else in the evidence suggested that Mr. Crum could keep a job as a janitor. Quite the contrary; the unchallenged evidence shows that he has difficulty climbing stairs, that he cannot climb ladders, that he cannot lift more than thirty pounds, that he drags his right foot and leg, that he cannot do household chores such as painting, changing a faucet or mowing the grass. Finally, his severely limited ability to read and write considerably handicaps him as a job applicant, even for janitorial work. Certainly, janitors must be able to bend, to lift heavy objects, to climb ladders, to paint, mow lawns, change faucets, and much more. They must also read printed directions that inevitably accompany heating and air conditioning equipment and the other machinery and substances used in building operations and maintenance.

Respondents rely entirely upon Dr. Russell's rating of Mr. Crum's disability at sixty-five percent of the body as a whole as though that closed the question. Of course, it does not. As we have seen, the test in the case of a claim of total disability is not the doctor's rating; it is the claimant's employability in the labor market. Medical testimony binds neither the commission nor this court. The extent and percentage of a claimant's disability must be based on all the evidence and all the reasonable inferences from that evidence. *Fogelsong v. Banquet Foods Corp.*, 526 S.W.2d 886, 892 (Mo.App.1975), and *Haggard v. Snyder Construction Co.*, 479

S.W.2d 142, 145 (Mo.App.1972). On the basis of all the evidence, the commission and the appellate court may approve a disability rating that exceeds the percentage rating made by the physician. *Blair v. Associated Wholesale Grocers, Inc.,* 593 S.W.2d 650, 655 (Mo.App.1980); *Murphy v. W.J. Lynch Co.,* 57 S.W.2d 685 (Mo.App. 1933).

In this case, the doctor's rating of Mr. Crum's disability at sixty-five percent of the body as a whole is nothing more than his conclusion based on his observations of the claimant's injuries and resulting physical incapacities. In the case of a claim for total disability, the doctor's estimate of the percentage of the claimant's disability is only another fact. By itself it cannot support the commission's or this court's final decision because by itself the rating does not answer the controlling question whether Mr. Crum was employable under the test set out in *Patchin v. National Super Markets, Inc., supra,* and *Groce v. Pyle, supra.* The rating does not by itself controvert the other undisputed evidence that establishes Mr. Crum's physical incapacity and it has no value if it finds no support in the other evidence or it is against the weight of the other evidence. The only evidence in this case, including the doctor's own testimony, supports the conclusion that Mr. Crum is totally disabled, that is, unemployable, not that he is only sixty-five percent disabled. Clearly, the doctor's estimate of the percentage of Mr. Crum's disability does not accord with his own testimony of the claimant's severely limited physical capacity. Therefore, the doctor's rating is not by itself probative and substantial evidence.

Much the same must be said of the fact that since his injury Mr. Crum has gone back to work five times. The undisputed evidence is that he returned to work on a trial basis, that he had a positive attitude, that is, he wanted to work, that his physical condition would not permit him to do the work, and that his condition deteriorated and may be expected to continue to deteriorate. Thus, the fact that he returned to work again and again, for shorter and shorter periods, does not by itself answer the controlling question whether in the end Mr. Crum is employable.

On this record, we cannot find that Mr. Crum can obtain a job in the labor market as a laborer, electrician or janitor, the only kinds of jobs suggested by the respondents or Mr. Crum's work history. To do so, we should have to indulge ourselves in the most liberal guesswork, rejecting the undisputed and unimpeached testimony of three witnesses not shown to be unworthy of belief.

The purpose of the workers' compensation law is to place on industry the losses sustained by employees caused by employment injuries. *Alexander v. Pin Oaks Nursing Home,* 625 S.W.2d 192, 193 (Mo. App.1981). The workers' compensation law is to be broadly and liberally interpreted with a view to the public interest and is intended to extend its benefits to the largest possible class. § 287.800, R.S.Mo., 1986; *Greer v. Department of Liquor Control,* 592 S.W.2d 188, 193 (Mo.App. 1979). Any doubt as to the right of the worker to the full benefits of the workers' compensation law should be resolved in favor of the injured employee. *Id.; Wolfgeher v. Wagner Cartage Service, Inc.,* 646 S.W.2d 781, 783 (Mo.1983) (en banc); *Barr v. Vickers, Inc.,* 648 S.W.2d 577, 580 (Mo. App.1983); and *Caldwell v. Melbourne Hotel Co.,* 116 S.W.2d 232, 241 (Mo.App.1938), *quashed in part on other grounds sub nom. State ex rel. Melbourne Hotel Co. v. Hostetter,* 344 Mo. 472, 126 S.W.2d 1189 (1939) (en banc).

One purpose of the law is to relieve the public of the burden of workers disabled by injury and place it on industry. *Cox v. Copeland Bros. Construction Co.,* 589 S.W.2d 55, 61 (Mo.App.1979). Another purpose is to relieve the injured worker himself and his dependents, who would otherwise bear such loss alone. *Beatty v. Chandeysson Electric Co.,* 238 Mo.App. 868, 190 S.W.2d 648, 654 (1945).

A case in many ways quite similar to this case is *Caldwell v. Melbourne Hotel Co., supra.* There, Maude Caldwell received an award of compensation for permanent partial disability. She appealed, contending

that she was totally disabled. The court of appeals held that, in view of her injury, her age (60), and her lack of training and education, the fact that a doctor had opined that she was able to do certain kinds of work sitting down was not sufficient to show that she was able to engage in any employment in the usual and customary manner of the average person so engaged. The court said that the doctor's

> opinion testimony is reduced to less than mere speculation in the face of the undisputed facts which show [her] to be a woman of sixty years of age, untrained, uneducated, and unfitted for any kind of work except common laboring work such as she was doing at the time she sustained her injury.

*Id.* at 241. The court held that no employer could reasonably be expected to hire Mrs. Caldwell in her condition at the time of the hearing. *Id.*

The *Caldwell* court pointed out that in adopting the workers' compensation law the legislature intended to grant employees compensation for work related injuries "as a matter of law and right." That legislative intent "should not be frustrated either by a narrow construction of the law, or by a strained consideration of the evidence." *Id.* The legislative command requires that all provisions of the law be construed "as indicative of the clear intention on the part of the legislature that the right to compensation not be whittled down from one schedule of compensation to another by evidence which amounts to nothing more than mere speculation and conjecture." *Id.*

In Mr. Crum's case, the only liberality displayed in the commission's decision and in the majority position is, as I have said, "liberal guesswork" that the claimant may be able to compete successfully in the job market.

We have no choice but to set aside the decision of the commission and to find as a matter of law that on this record Mr. Crum is entitled under § 287.200 to compensation for total disability. We may do so in the knowledge that under subsection 2 of § 287.200 the employer and the division of workers' compensation are required to keep the file open in Mr. Crum's case during his lifetime so that in the event he is restored to his regular work or its equivalent his life payment for total disability may be suspended during the time he is so restored.