**Anthony T. DORIA,
Claimant–Appellant,**

v.

**CHEMETRON CORPORATION,
Employer–Respondent.**

**No. 16390.**

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 17, 1990.

Motion for Rehearing or to Transfer to
Supreme Court Denied
Feb. 6, 1990.

Application to Transfer Denied
March 13, 1990.

Bruce K. Kirby, Schmidt, Kirby & Sullivan, P.C., Springfield, for claimant-appellant.

William W. Francis, Jr., Joyner, Placzek & Francis, Springfield, for employer-respondent.

GREENE, Judge.

Anthony T. Doria appeals from a final award issued by the Labor and Industrial Relations Commission of Missouri (commission) finding, among other things not relevant here because not appealed from, that he was injured in an on-the-job accident that occurred on January 7, 1985; that his right foot was severely injured in the accident, and that the accident aggravated a pre-existing back condition, all of which entitled him, in addition to medical expenses, to an award of 30 percent permanent partial disability, which calculated to 120 weeks' compensation at the rate of $143.19 a week.

On appeal, Doria contends that the facts and medical testimony supported an award of permanent total disability, so that the award of the lesser disability status was error. We affirm.

Doria was an employee of the Chemetron Corporation. On January 7, 1985, Doria, in the course of his employment, was standing on a stack of steel rails that were loaded on a railroad car that was parked on Chemetron's premises in Springfield, Missouri. Doria was attempting to throw a metal rail guide shoe from the railroad car to the ground. A bolt protruding from the shoe caught in Doria's clothing, and the momentum and weight of the shoe caused Doria to fall from the railroad car. As a result of the fall, the metal shoe fell on his right foot, causing substantial injury. The fall also aggravated Doria's pre-existing back condition, known as spondylolisthesis. Dr. Hugh Harris diagnosed Doria's injuries as a fractured dislocation of the mid tarsal joints of Doria's right foot and an aggravation of a "long-standing" back condition, and treated Doria for the foot injury. The last time Dr. Harris saw Doria was November 8, 1985, at which time he certified Doria as being able to return to work.

After Doria's treatment was terminated by Dr. Harris, Doria contacted a number of doctors, including Drs. Folck, Vidoloff, Marston, Bloom and LaVelle for treatment of and/or diagnosis of his injuries.

On June 16, 1986, Doria filed a claim for compensation claiming permanent injury to

his back, foot and ankle. Following the filing of the company's answer, a hearing was held before an administrative law judge for the commission. After hearing testimony from the employee and others, including Drs. Harris, Folck, LaVelle, Marston, and Vidoloff, the administrative law judge found that Doria suffered 30 percent permanent partial disability to the body as a whole, and awarded him, in addition to medical expenses not relevant here, compensation for 120 weeks at the rate of $143.19, totaling $17,182.80. In his application for review filed with the commission, Doria contended, among other things not relevant here because they are not in issue, that "[u]nder all of the evidence the employee should have been held to be totally disabled," and that the administrative law judge erred in not making an award of future medical expenses. On review, the commission affirmed the award of the administrative law judge relative to the percentage of permanent partial disability, but modified the award by allowing awards for future medical expenses and future prosthetic devices for Doria's foot. This appeal followed.

The only issue here relates to the extent of Doria's disability. At least six doctors examined Doria, four of whom, Harris, Folck, Bloom and LaVelle, rated Doria's permanent partial disability at less than the 30 percent of the body as a whole rating made by the administrative law judge, and affirmed by the commission. One of the doctors, Dr. Marstan a podiatrist, did not feel he could rate Doria for workers' compensation purposes. Only one doctor, Dr. Vidoloff, a physical therapist, felt that Doria was totally disabled, but he could not say what percentage of the disability was attributed to the accident.

■ . Where, as here, expert opinion differs as to the extent of disability, determinations by the commission concerning the conflicting views should not be disturbed on appeal unless they are against the overwhelming weight of the evidence. *Patchin v. National Super Markets, Inc.*, 738 S.W.2d 166, 167 (Mo.App.1987).

■ The determination of the percentage of disability is within the special province of the commission. It is not bound by the percentage estimates of medical experts, and it may consider all of the evidence, including the testimony of the employee, and draw all reasonable inferences in arriving at the percentage of disability. *Blair v. Associated Wholesale Grocers, Inc.*, 593 S.W.2d 650, 655 (Mo.App.1980).

■ Although Doria testified that he was unable to do any type of work, because of back pain, that opinion was contradicted by the opinion of the medical experts. Dr. Hugh Harris, an orthopedic surgeon, rated Doria's permanent disability at 5 percent of the body as a whole, and felt that Doria was able to seek employment. Dr. William Folck, whose specialty is occupational medicine, thought Doria had a permanent partial disability of the body as a whole of 29 percent. Dr. John Bloom, a chiropractor, rated Doria's disability at 20–25 percent of the body as a whole, while Dr. David LaVelle, an orthopedic surgeon, rated his disability at 26 percent of the body as a whole. Only Dr. John Vidoloff, a physical therapist, rated Doria's disability at more than 30 percent. Drs. Harris, Folck, LaVelle and Vidoloff all agreed that Doria could perform some sort of work.

"The term 'total disability' ... shall mean inability to return to any employment and not merely mean inability to return to the employment in which the employee was engaged at the time of the accident." § 287.020.7, RSMo 1986, V.A.M.S. (Cum. Supp.1989). There was substantial evidence that Doria was not "totally disabled," as that term is defined in the statute, and substantial and competent evidence that Doria's permanent partial disability as the result of the accident was 30 percent of his body as a whole.

This being so, the commission's award is supported by competent and substantial evidence, and should be, and is, affirmed.

CROW, C.J., and PREWITT, J., concur.