Elva LAWRENCE, Claimant–Appellant,

v.

JOPLIN R–VIII SCHOOL DISTRICT, Employer–Respondent,

and

Treasurer of the State of Missouri as Custodian of the Second Injury Fund, Respondent.

No. 17845.

Missouri Court of Appeals, Southern District, Division Two.

June 25, 1992.

Glenn R. Gulick, Jr., Joplin, for claimant-appellant.

Ronald G. Sparlin, Blanchard, Van Fleet, Martin, Robertson & Dermott, Joplin, for employer-respondent.

Kevin Hays Dunaway, Springfield, for respondent.

SHRUM, Judge.

Claimant Elva Lawrence appeals from a final award entered by the Labor and Industrial Relations Commission in her workers' compensation claim against her employer, Joplin R–VIII School District; its insurer, Maryland Casualty Company; and the custodian of the Second Injury Fund. The Commission found the claimant to be permanently partially disabled, a condition attributed in part to her work-related acci-

dent, and it found she had a pre-existing disability that entitled her to compensation from the Second Injury Fund. The Commission denied her claim to a permanent and total disability rating. The claimant appeals; we affirm.

## FACTS

The claimant, born in July 1935, finished the tenth grade. She married at age 15 and did not work until her husband's death in 1979. In 1979, she received her GED and began work for a Joplin wholesale stationery company filling orders, packing boxes, and loading trucks. She next worked at a hospital as a purchasing clerk. She began work as a school bus driver for the Joplin R–VIII School District around 1983 and continued that employment until January 6, 1988, when she slipped and fell at work, sustaining injuries.

Following the accident she filed a claim against her employer, its insurer, and the Second Injury Fund, alleging she was permanently and totally disabled. She stated that her previous disability consisted of "systemic illness, diabetes—1982 fusion in the neck."

A hearing was conducted before Chief Administrative Law Judge Robert H. House (ALJ), whose detailed findings of fact and rulings of law were adopted by the Commission in its affirmance of his award. We quote pertinent portions of those findings and conclusions.

"In determining whether Claimant is permanently and totally disabled, I must initially assess Claimant's credibility as a witness.... I have difficulty believing Claimant's testimony that she had no physical problems or difficulties in working after the 1981 surgery which resulted in a fusion of her neck at C–5 and C–7. I also find it difficult to believe that she had no difficulties at work caused by her pre-existing problems of hypertension, emphysema, and diabetes.... I find it difficult to believe

Claimant's testimony of her current complaints in light of Drs. Vale's and Toma's objective findings when compared to Claimant's subjective complaints....

"Thus, in light of my review of all the medical evidence and my doubts concerning Claimant's credibility as to her physical condition prior to and after her accident, it is my opinion that if Claimant is currently permanently and totally disabled it is based upon a combination of the [work]-related accident, her pre-existing disability, and the progression of her pre-existing diseases following her visit with Dr. Vale of November 17, 1988. Thus, there is insufficient evidence in the record to find that Claimant is permanently and totally disabled solely as a result of her work related injury. I find that Claimant has a current permanent partial disability of 65 percent to the body as a whole referable to her cervical spine. This includes 20 percent permanent partial disability for all cervical conditions existing prior to the January 26 [sic], 1988, injury. Thus, employer-insurer is liable for 45 percent permanent partial disability to the body as a whole.... [E]mployer-insurer is ordered to pay Claimant 180 weeks of compensation at the agreed upon compensate [sic] rate of $152.75 for a total of $27,495.00.

"Claimant also sought an award against the Second Injury Fund.... It is clear from the record that Claimant had serious medical problems prior to her January 6, 1988, injury.... As a result, I must find that Claimant's ability to work was diminished and that she was industrially disabled [1] as a result of her pre-existing conditions.... However, the medical evidence does not lead to the conclusion that Claimant is permanently and totally disabled as a result of the combination of her pre-existing disabilities and the current permanent partial disability found to be 45 percent of the body as whole in this award.... [I]t is clear that Claimant's condition has progressively worsened over time. I find more

1. The term "industrial disability" was first introduced by our supreme court in *Wilhite v. Hurd,* 411 S.W.2d 72 (Mo.1967), in which the court stated, "The preexisting permanent partial disability necessary to compensation from the Second Injury Fund under Section 287.220 V.A.M.S., relates to disability to work and means 'industrial disability' or loss of earning capacity, rather than physical impairment as such." *Id.* at 77[3].

credible the opinion of Dr. Folck that the worsening in Claimant's condition is based upon the progression of her pre-existing diseases. I cannot find from the record that that worsening in those pre-existing diseases was related to the accident.... Consequently, I find that Claimant suffered a pre-existing industrially disabling disability in the amount of 20 percent to the body as a whole referable to Claimant's neck and 5 percent to the body as a whole referable to Claimant's diabetes, hypertension, peripheral neuropathy, and emphysema for which Second Injury Fund is liable under Section 287.220. That disability when combined with the prior disabilities results in a disability greater than either would be separately. Consequently, the Second Injury Fund is liable for the following: pre-existing disability to the body as a whole referable to the neck at 20 percent of the body as a whole or 80 weeks of compensation; and pre-existing disability for Claimant's pre-existing diabetes, hypertension[,] peripheral neuropathy[,] and emphysema five percent to the body as a whole for 20 weeks of compensation. Thus, the total weeks of compensation for Second Injury Fund liability would be 280 weeks. I believe that a 15 percent loading factor should be used against the Fund, which would require the Fund to pay for 42 weeks of compensation at the agreed upon compensation rate of $152.75 for a total of $6,415.50."

The award included an order that the employer-insurer pay the claimant's medical bills of $1199. Additional facts will be set out as needed in the course of the discussion of the claimant's points on appeal.

## DISCUSSION AND DECISION

In her first point on appeal, the claimant challenges the conclusion that she "was not totally and permanently disabled as a result of her occupational accident and any pre-existing disability" as "contrary to the facts found by the Commission" and "not supported by competent evidence." She argues that the allegedly erroneous conclusion resulted from the Commission's failure to apply the appropriate test to determine total and permanent disability.

We summarize the sub-points of the claimant's point relied on and her argument: The Commission's determination of 80.5 percent permanent partial disability to the body as a whole cannot be reconciled with the Commission's finding that the claimant was totally disabled at the time of the hearing because of a combination of the work-related accident, her pre-existing disability, and the expected progression of her pre-existing diseases subsequent to the accident. As a result, the argument goes, we must conclude the Commission gave no consideration to the progressive nature of her pre-existing diseases and her advanced age and lack of job skills, training, and experience, all of which combined to render her not employable in the competitive open labor market.

The claimant asserts that the "legal principles applicable to this case" are contained in the following passage from *Isacc v. Atlas Plastic Corp.*, 793 S.W.2d 165 (Mo.App. 1990):

The test for permanent total disability is whether, given the employee's situation and condition, he is competent to compete in the open labor market. *Laturno v. Carnahan*, 640 S.W.2d 470, 472[3, 4] (Mo.App.1982). This test measures the worker's prospects for returning to employment. *Patchin v. National Super Markets, Inc.*, 738 S.W.2d 166, 167[3] (Mo.App.1987). Total disability means the inability to return to any reasonable or normal employment. It does not require that the employee be completely inactive or inert. *Kowalski v. M–G Metals and Sales, Inc.*, 631 S.W.2d 919, 922[5] (Mo.App.1982). The central question is whether any employer in the usual course of business would reasonably be expected to employ the employee in his present physical condition. *Id.*

793 S.W.2d at 166. Relying on *Isacc* and her reading of the record, the claimant argues that the Commission "could not properly have found employee to not be totally disabled ... without having first found that an employer in the usual course

of business would reasonably be expected to hire Elva Lawrence." Based on the record before us, the claimant argues, this court should determine, as a matter of law, that she was totally and permanently disabled.

The claimant appears to misread portions of the Commission's findings. Contrary to the claimant's assertion, the Commission did not find that the claimant was totally and permanently disabled at the time of hearing. Rather, it found that *"if* Claimant is currently permanently and totally disabled it is based upon a combination of the [work]-related accident, her pre-existing disability, and the progression of her pre-existing diseases following her visit with Dr. Vale of November 17, 1988 (emphasis added)."

Although the Commission recognized there was evidence from which it might have concluded the claimant was totally disabled, it rightly focused on the critical issue of causation. Thus the Commission stated, "[T]here is insufficient evidence in the record to find that Claimant is permanently and totally disabled solely as a result of her work related injury." And, "[T]he medical evidence does not lead to the conclusion that Claimant is permanently and totally disabled as a result of the combination of her pre-existing disabilities and the current permanent partial disability...."

 A claimant in a workers' compensation case carries the burden of proving all the essential elements of the claim, including causation. *Fischer v. Archdiocese of St. Louis,* 793 S.W.2d 195, 198 (Mo.App. 1990). In a Second Injury Fund case, proof of the condition is not proof of causation. *Wilhite,* 411 S.W.2d at 76. By unambiguous language, the legislature has imposed potential liability on the Second Injury Fund for claimants who, "at the time of the last injury," had some partial disability. § 287.220.1, RSMo Supp.1987. The ALJ or Commission is to consider the "degree ... of employee's disability that is attributable to all injuries or conditions *existing at the time the last injury was sustained...."* Id.

 By her argument the claimant would have us expand § 287.220.1 to impose liability for any worsening of a claimant's pre-existing disability occurring after the last injury was sustained without regard to whether the last injury contributed to or aggravated the pre-existing condition. This we decline to do. Such interpretation would not promote the purpose of the Second Injury Fund.[2] The Second Injury Fund provides compensation for previously existing disabilities, not increased disabilities caused by post-accident worsening of pre-existing diseases when that worsening was not caused by or aggravated by the last injury. The view urged by the claimant would convert the Second Injury Fund to a form of health insurance which it is not.

 The evidentiary support for the causation aspect of the Commission's ruling is found primarily in the testimony of Dr. Folck who examined the claimant on February 5, 1990, at the request of the Second Injury Fund. He testified that when he examined the claimant she was totally disabled, probably permanently so. He rated her disability as 50% to 75% of the body as a whole referable to her neck,[3] with the

2. "The purpose of the Second Injury Fund is twofold: to encourage the employment of individuals who are already disabled; and to relieve an employer or his insurer of liability for the previously disabled employee's total and permanent disability where that disability is not specifically attributable to an injury suffered during the period of employment with that employer." *Roby v. Tarlton Corp.,* 728 S.W.2d 586, 589 (Mo.App.1987) (citing *Meilves v. Morris,* 422 S.W.2d 335, 338 (Mo.1968) and Slusher, *The Second Injury Fund,* 26 Mo.L.Rev. 328 (1961)).

3. Dr. Folck admitted that when he examined the claimant he was unaware of her 1981 neck fusion. He was not furnished records pertaining to the earlier surgery, and the claimant had denied having had surgery and had denied to Dr. Folck there were any preexisting conditions which impaired her ability to work. He further acknowledged that even with the best result, he would normally give a 15% body-as-a-whole disability rating to a patient who had undergone a cervical fusion. After learning of the previous neck surgery, he testified that his total rating of 50–75% of the body as a whole included both surgeries; that he could not separate them because of the claimant's statements to him.

remainder of her disability being caused by "progression of her underlying diseases." After reviewing reports by Dr. Vale concerning her examination of the claimant in late 1988, Dr. Folck testified that there was unquestionably some "event occurring since October of 1988 which ... resulted in an increase or worsening of the symptoms that [he] observed in February of 1990." Finally, in his report, Dr. Folck stated:

> It is obvious that a substantial portion of her disability is a result of progressive disease processes, such as her diabetes and hypertension, which have become quite symptomatic since her injury, but not necessarily a result of her injury. It is quite reasonable that she has had some type of cerebral vascular accident within the last 6 months, which I could not attribute to her trauma, and certainly would be considered as occurring subsequent to her injury of 1–6–88, and primary treatment.

The record contains sufficient evidence to support the causation aspect of the Commission's ruling.

The Commission did not ignore the "individual quality" of the claimant. As part of its findings the Commission correctly recited what the record revealed concerning her educational and work experience limitations. It recited the definition of *total disability* in the Missouri Workers' Compensation Law[4] and cited *Patchin v. National Super Markets, Inc.*, 738 S.W.2d 166 (Mo.App.1987), and *Vogel v. Hall Implement Co.*, 551 S.W.2d 922 (Mo.App. 1977), for principles of law related to that definition.[5]

■ The Commission sifted through the evidence and determined that the claimant suffered from a combined 80.5% *compen-sable* disability of the body as a whole. That rating is an implicit or inherent finding that, absent her worsened diseased condition which was not compensable, the claimant was employable. *See Jones v. Jefferson City School Dist.*, 801 S.W.2d 486, 490 (Mo.App.1990) (Commission's finding that claimant suffered from a 94.5% disability was an "inherent finding" that she was employable; award affirmed as against contention that there was not sufficient evidence to support the award).

■ Evidentiary support for the Commission's determination that the claimant was employable is found in Dr. Vale's clinical records. The report of October 6, 1988, states:

> Patient is congratulated in her excellent progress to date and her compliance with the treatment plan.... It was discussed that it would be medically permissible for patient to consider driving van for school though would not recommend driving larger buses. Patient, however, is encouraged to seek alternative employment if return to work as a van driver would not be an option.

After performing a physical examination of the claimant on November 17, 1988, Dr. Vale rated her permanent impairment at 35% because of the work-related fall and 25% because of her previous cervical surgery and pre-existing diabetes and hypertension. In conclusion, Dr. Vale stated, "Patient may seek employment which is essentially sedentary in nature."

Dr. Vale's records provide evidence to support a determination that the claimant was not permanently and totally disabled by reason of a combination of the injuries sustained in the accident and her pre-exist-

---

4. § 287.020.7, RSMo 1986, states, "The term 'total disability' ... shall mean inability to return to any employment and not merely mean inability to return to the employment in which the employee was engaged at the time of the accident."

5. In *Patchin* the court stated, "The test for permanent total disability in Missouri is the worker's ability to compete on the open labor market in that it measures the worker's prospects for returning to employment." 738 S.W.2d at 167.

In *Vogel* the court noted that the phrase "inability to return to any employment" means the person is "unable to perform the usual duties of the employment under consideration, in the manner that such duties are customarily performed by the average person engaged in such employment." 551 S.W.2d at 926. The court pointed out that the employment under consideration should be a "normal dignified occupation" and not a demeaning activity such as sitting on the street selling peanuts, pencils, or shoe strings. *Id.* at 927.

ing disabilities. *See Johnson v. Terre Du Lac, Inc.*, 788 S.W.2d 782, 783–84[3] (Mo. App.1990). The fact that there was evidence that would support a finding of a higher degree of impairment does not require reversal.

Where, as here, expert opinion differs as to the extent of disability, determinations by the commission concerning the conflicting views will not be disturbed on appeal unless they are against the overwhelming weight of the evidence.

The determination of the percentage of disability is within the special province of the commission.

*Doria v. Chemetron Corp.*, 784 S.W.2d 323, 325[1, 2] (Mo.App.1990) (citation omitted). We find the Commission's award to be supported by competent and substantial evidence and that it was not contrary to the facts as found by the Commission. The claimant's Point I arguments are rejected.[6]

■ In her second point on appeal, the claimant urges us, if we decline to find her totally and permanently disabled as a matter of law, to remand to the Commission so that it might make "a finding of the ultimate fact," namely, "whether any employer in the usual course of business would reasonably be expected to employ the [claimant] in her then-present condition."

The Commission's findings must be "sufficient to show how the controlling issues have been decided, otherwise a reviewing court will be unable to know what the Commission has really determined in order that it may know what to review and whether or not correct rules of law have been applied to facts which properly could be found on the particular record." *Smith v. Ozark Lead Co.*, 741 S.W.2d 802, 811 (Mo.App.1987). We have noted that, in making its award, the Commission correctly defined *total disability* under the Missouri Workers' Compensation Law. The Commission rated the claimant's combined compensable disability at 80.5% of the body as a whole. We have also stated that the 80.5% rating is an implicit or inherent finding that, absent her worsened diseased condition which was not compensable, the claimant was employable. *See Jones*, 801 S.W.2d at 490. That rating is supported by Dr. Vale's testimony that the claimant could hold sedentary employment. The existence of such evidence in this record distinguishes this case from *Isacc* in which there was no evidence that claimant could hold any type of employment. We are able to determine that the Commission applied correct rules of law to facts which properly could be found on this record. Remand for additional fact finding is not necessary. We reject Point II.

We affirm the Commission's award.

FLANIGAN, C.J., and MONTGOMERY, J., concur.

---

**6.** *Fischer*, 793 S.W.2d 195; *Roby*, 728 S.W.2d 586; *Kowalski*, 631 S.W.2d 919; and *Isacc*, 793 S.W.2d 165 do not conflict with our opinion. In *Fischer*, *Roby*, and *Kowalski*, the Commission found the respective claimants to be permanently and totally disabled. Because there was sufficient evidence to support the Commission's findings, the respective appellate courts affirmed. In *Isacc* the Commission found the employee had a 5% permanent disability. After acknowledging that the Commission's award would be upheld unless it was not supported by substantial evidence or was clearly contrary to the overwhelming weight of the evidence, 793 S.W.2d at 165–66, the appellate court concluded "the record is indicative of total disability" and it reversed and remanded to give the parties "an opportunity to present further evidence of the ability of the employee to compete in the open labor market." *Id.* at 167. Here, there is substantial evidence in the record to support the award, and the award is not against the overwhelming weight of the evidence.