

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| HAROLD WILLIAMS (DECEASED); | ) | |
| | ) | |
| DUSTIN WILLIAMS, | ) | WD82294 |
| | ) | |
| Appellant, | ) | OPINION FILED: |
| | ) | December 10, 2019 |
| v. | ) | |
| | ) | |
| TREASURER OF THE STATE OF | ) | |
| MISSOURI - CUSTODIAN OF THE | ) | |
| SECOND INJURY FUND, | ) | |
| | ) | |
| Respondent. | ) | |

### Appeal from the Labor and Industrial Relations Commission

Before Division Three:  Alok Ahuja, Presiding Judge, Gary D. Witt, Judge and Anthony Rex Gabbert, Judge

Harold Williams ("Williams") appeals the Final Award of the Labor and Industrial Relations Commission ("Commission") finding that Williams was not permanently and totally disabled and thus the Treasurer of the State of Missouri as Custodian of the Second Injury Fund ("Fund") had no liability.  Williams raises three allegations of error.  We affirm.

**Factual and Procedural Background**

Williams was born July 18, 1946. On December 3, 2000, while working as a truck driver for Dakota Coast, Inc. ("Dakota Coast"), he slipped and fell on oil at a gas station. He injured his right knee, low back, and left thumb as a result of the fall ("Primary Injury"). Williams underwent two surgeries for the injury to his right knee. He received three injections in his back. His left thumb was placed in a cast. Williams filed a workers' compensation claim against Dakota Coast based on this fall on March 21, 2001. He also brought a claim against the Fund alleging that a pre-existing back injury combined with his Primary Injury to render him permanently and totally disabled.

Williams continued to seek treatment for and complain of back and knee pain stemming from his Primary Injury. Immediately following the injury he was to receive physical therapy for his back and knee and be evaluated for possible back surgery. Before he could complete treatment, however, he was incarcerated for felony second-degree drug trafficking. He received no orthopedic treatment from 2002 to 2004 while he was incarcerated although he continued to complain of right knee and low back problems while in prison. He again sought treatment for the Primary Injury when he was released from prison but again was incarcerated for a parole violation in 2005 until May or June 2007. He sought an evaluation for back pain in September 12, 2008, but was again incarcerated on September 30, 2009, and remained incarcerated until his death on May 10, 2013. His death was caused by end stage liver disease caused by hepatitis C and cirrhosis of the liver and also having chronic obstructive pulmonary disease. His son who was the personal

representative of Williams's estate, Dustin Williams, was substituted as a party for Williams.[1]

Williams's Primary Injury claim was settled with Dakota Coast on January 30, 2015, for 33.7% permanent partial disability of the right knee; 5% permanent partial disability of the left knee; 15% permanent partial disability of the low back, and 7.5% permanent partial disability of the left hand. The question of Fund liability remained open for determination.

A hearing was held before an Administrative Law Judge ("ALJ") on July 11, 2017. The ALJ entered a Final Award finding that Williams was not permanently and totally disabled as a result of the combination of his Primary Injury and his pre-existing disability. Further, the ALJ found that, prior to his death, Williams never reached maximum medical improvement for his Primary Injury and, because the Fund is not liable for payment of permanent disability benefits until a claimant has reached maximum medical improvement, there could be no Fund liability. The ALJ also found that Williams's only preexisting condition was a lumbar spine condition and he failed to prove a synergistic effect between the preexisting spine condition and the Primary Injury resulting in a greater combined disability.[2]

Williams appealed the award of the ALJ to the Commission. The Commission decided the appeal based on the record of the hearing before the ALJ without hearing

---

[1] For ease of discussion we continue to reference Williams as the claimant despite his death and his son's substitution.

[2] The ALJ refers to the "injuries from the October 3, 2008 accident." This appears to be a typographical error as the only injury at issue was the Primary Injury.

3

additional evidence.[3] The Commission affirmed and adopted the Final Award of the ALJ but also issued a supplemental opinion to amend the findings as to maximum medical improvement and add additional discussion of the issues presented. The Commission found, contrary to the finding of the ALJ, that the record did support a finding that Williams had reached maximum medical improvement for his Primary Injury by the end of 2001. The Commission also specifically found that Williams was not credible in his testimony regarding his injuries. It additionally noted that: "Employee did not meet his burden to show [F]und liability because of his lack of credibility and because the evidence does not support that the pre-existing back injury synergistically combined with the primary injury." The Commission denied Fund liability, and this appeal followed.

**Standard of Review**

Under section 287.495[4] we will affirm the award of the Commission unless the Commission acted in excess of its powers, the award was procured by fraud, the facts do not support the award, or insufficient competent evidence exists to warrant the making of the award. Section 287.495.1; *Barker v. Sec'y of State's Office of Mo.*, 752 S.W.2d 437, 441 (Mo. App. W.D. 1988). "We also review the findings and award of the Commission rather than those of the ALJ, to the extent that it departs from the ALJ's ruling. To the extent that the Commission affirms and adopts the ALJ's findings and conclusions, we

---

[3] The Commission allowed Williams to supplement the record to supply two pages missing from the 1988 report of Dr. Thomas Highland, which were inadvertently omitted from the record.

[4] "In a workers' compensation case, the statute in effect at the time of the injury is generally the applicable version." *Anderson v. Veracity Research Co.*, 299 S.W.3d 720, 725 (Mo. App. W.D. 2009) (quoting *Chouteau v. Netco Constr.*, 132 S.W.3d 328, 336 n. 3 (Mo. App. W.D. 2004)). Thus, in this case, all statutory citations are to RSMo. 2000 as updated through December 3, 2000, the date of the Primary Injury.

4

review the ALJ's findings and conclusions." *Small v. Red Simpson, Inc.,* 484 S.W.3d 341, 344 (Mo. App. W.D. 2015) (internal citation omitted). "[W]e examine the record as a whole to determine if the award is supported by sufficient competent and substantial evidence, or whether the award is contrary to the overwhelming weight of the evidence." *Lawrence v. Treasurer of State-Custodian of Second Injury Fund*, 470 S.W.3d 6, 12 (Mo. App. W.D. 2015) (citing *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222-23 (Mo. banc 2003)). "We defer to the Commission's credibility determinations and to the weight it accords the evidence, but we review issues of law, including the Commission's interpretation and application of the law, *de novo*." *Lawrence*, 470 S.W.3d at 12. Because our review is based on the statutes in effect in 2000, we must construe the provisions of the workers' compensation statutes liberally "with a view to the public welfare" and substantial compliance with their terms is sufficient. Section 287.800; *Small v. Red Simpson, Inc.,* 484 S.W.3d 341, 345 (Mo. App. W.D. 2015).

## Discussion

Williams brings three allegations of error on appeal. First, he contends that the Commission erred in finding that there was not synergy between his preexisting back injury and the Primary Injury because synergy was not required as this was a claim for permanent total disability against the Fund. Second, the Commission erred in finding that Hepatitis C and its related liver problems and Williams's loss of a kidney were not preexisting disabling conditions. Third, the Commission's finding that there was no Fund liability was not supported by competent and substantial evidence and is against the overwhelming weight of the evidence.

5

**I.**

Williams's first point alleges that the Commission erred in finding that there was not synergy between Williams's preexisting back injury and his Primary Injury both because synergy is not required and because, even if it was required, Williams met his burden. Williams is correct that synergy is not required for a finding of permanent total disability against the Fund. *See Leutzinger v. Treasurer of Mo. Custodian of the Second Injury Fund*, 895 S.W.2d 591, 594 (Mo. App. E.D. 1995). The Fund does not dispute this point. The Fund, however, notes that the Commission's finding that Williams failed to prove synergy was related to the rejection of his claim for permanent partial disability as opposed to the permanent total disability claim at issue in this appeal. We agree. While the only challenge raised by Williams in his first point relied on is to the Commission's finding regarding permanent total disability, the ALJ and Commission also had before it a claim that Williams was permanently partially disabled resulting in Fund liability. The Commission did not state that synergy was expressly being considered in conjunction with the permanent total disability claim. Because synergy is a factor to be considered under a permanent partial disability claim, when the Final Award is read in its entirety, once the Commission found that Williams failed to establish that he was permanently and totally disabled the Commission was then required to decide the issue of synergy in regard to the partial disability claim.

All parties are in agreement that evidence of synergy is not required for a finding of permanent total disability, and as that is the only claim raised in the first point on appeal, we need not address Williams's argument that he did, in fact, prove synergy between the

6

injuries. All discussion as to synergy is only relevant to a discussion of permanent partial disability which has not been challenged by Williams on appeal. Thus, we find his first point on appeal to be without merit, and it is denied.

**II.**

Williams's second point on appeal contends that the Commission erred in finding that Williams's hepatitis C and related liver problems as well as his loss of a kidney were not preexisting conditions because there were no medical opinions to support such a finding. Williams contracted hepatitis C in the 1970s. Following his Primary Injury, Williams underwent an MRI that revealed a cancerous mass on his right kidney requiring surgery to remove the kidney on February 13, 2001.

Williams alleges that Dr. Jeffrey Parmet ("Dr. Parmet") offered uncontroverted medical testimony that Williams's hepatitis C and kidney problems were preexisting conditions that constituted a hindrance or obstacle to employment. While we defer to the Commission on questions regarding the credibility of witnesses, the Commission cannot substitute its judgment for that of a qualified medical expert on the question of causation. *Angus v. Second Injury Fund*, 328 S.W.3d 294, 300 (Mo. App. W.D. 2010). However, "it is possible that the existence or absence of injury and causation are so obvious from the physical facts that one of ordinary understanding may reject even unchallenged medical expert testimony to the contrary." *Id.* at 301 (noting that causation of a herniated disk or the types of arthritis are complex medical issues that are not within the expertise of an ALJ).

7

Dr. Parmet was originally retained by Dakota Coast to evaluate Williams Primary Injury. Dr. Parmet performed his evaluation on February 24, 2011. Dr. Parmet was later endorsed by Williams as an expert in regard to his claim against the Fund. In his 2012 deposition, Dr. Parmet offered the following testimony regarding Williams's liver and kidney conditions:

Q. Let me turn to some of these other problems. You never related them to work, but you did indicate that all of his current conditions are preexisting and are degenerative in nature. You would agree, wouldn't you, that he did have several preexisting medical conditions that would constitute some kind of hindrance or obstacle to employment or reemployment, wouldn't you?

A. Yes.

Q. And you didn't rate any of those, but I assume you weren't asked to; is that correct?

A. I wasn't asked to, and particularly for some of them I didn't have sufficient information to be able to do that, but there clearly was impairment there.

Q. Okay. And to the extent he has these preexisting conditions, you would agree, wouldn't you, that they would then combine within the work-related problem to affect his overall employability in the open labor market, wouldn't you?

A. Yes.

Q. You mention he has questionable capacity of employment. Do you believe these prior conditions combine to make him totally disabled?

A. That is a distinct possibility.

Q. Is that something you might defer to a vocational expert on who could assess his ability to work considering his limitations and conditions related to all of these conditions?

A. Well, before I send it to an occupational -- or vocational expert, I would need to be able to assess the degree of impairment, particularly with regard to his liver and kidney.

8

Q. Okay.

A. He's got cirrhosis. It looks to me like it's pretty advanced. And that has the potential to be anywhere from totally disabling to mildly disabling, but it's going to have some impact.

Q. And that's something you said dates back to the '70s when he developed the hepatitis; right?

A. He developed the hepatitis in the '70s, and he's been getting cirrhosis over the last ten years or so. In addition, he lost the kidney in 2001. I would need to know the status of his other kidney, because that can also impact. If the other kidney's completely normal, then there might be very little impact on employability. But if he's got compromise of his remaining kidney, then that can be very serious. So before a vocational expert can assess him, we really need to know what his physical limitations are, and these could be quite extensive.

Q. So is it fair to say you just need some more information if you were to -- in order to evaluate the prior disabilities and reach that final conclusion regarding permanent total disability?

A. That's correct.

When read in its totality, it is clear that Dr. Parmet's deposition testimony does not support Williams's argument. Dr. Parmet testified in 2012, (12 years after the Primary Injury occurred) that the cirrhosis of Williams's liver occurred over "the last ten years or so," which would place the cirrhosis after the Primary Injury and thus, would not constitute a preexisting condition. Even were it preexisting, at best Dr. Parmet could only state that it was somewhere between mildly and totally disabling but, at the time of this deposition, that he lacked the necessary information to make that determination. His testimony regarding Williams's kidney surgery was similarly limited. Dr. Parmet concedes that the kidney was removed in 2001, an event occurring after the Primary Injury. He provided no

9

testimony to support Williams's argument that he suffered impairment and disability from his kidney issues prior to the Primary Injury. While the testimony established that Williams was diagnosed with hepatitis C many years prior to the Primary Injury, the resulting liver damage and any disability arising therefrom was never established to have occurred prior to the Primary Injury. Further, even if Williams's kidney problems predated the Primary Injury, at best Dr. Parmet testified that the impact on his employability might be "very little" or "very serious." While Williams focuses on the fact he was diagnosed with hepatitis C in the 1970's, when this condition began to effect his kidney function or result in any employment related disability is not established by the testimony or medical records in this matter.

Dr. Parmet was provided with additional medical records and provided an updated opinion letter on February 25, 2016. In that letter, Dr. Parmet noted that he had previously evaluated the preexisting conditions but had not provided an opinion regarding preexisting disability. He again identified hepatitis C as a preexisting condition finding that Williams would have had 25% permanent partial disability due to the "degree of cirrhosis" of the liver. Further, that "the loss of an entire kidney" is at a minimum assessed at 35% permanent partial disability to the body as a whole. However, again, according to Dr. Parmet's own testimony, the cirrhosis of Williams's liver and the loss of his kidney did not occur until after the Primary Injury. Dr. Parmet offered no testimony that Williams's hepatitis C pre-cirrhosis or Williams's kidney condition before its surgical removal were hindrances or obstacles to his employment prior to the Primary Injury.

Increased disability caused by post-accident worsening of preexisting disease which has not caused any disability prior to the time of the primary injury should not be considered when determining total disability except, when that worsening of the preexisting disease was caused by or aggravated by the primary injury. *Lawrence v. Joplin R-VIII Sch. Dist.*, 834 S.W.2d 789, 793 (Mo. App. S.D. 1992). "The disability, whether known or unknown, must exist at the time the work-related injury was sustained and be of such seriousness as to constitute a hindrance or obstacle to employment or re-employment should the employee become unemployed." *Portwood v. Treasurer of State of Mo.- Custodian of the Second Injury Fund*, 219 S.W.3d 289, 292 (Mo. App. W.D. 2007). As explained by *Portwood*, the Fund is liable where a preexisting disability combines with a compensable disability to result in a greater disability than when the two are considered individually. *Id.* at 293. However, preexisting conditions are not considered disabilities "as of the date of the second injury simply because, at some point in the future, they combine with that injury to render the claimant permanently . . . disabled." *Id.* (quoting *Gassen v. Lienbengood*, 134 S.W.3d 75, 81 (Mo. App. W.D. 2004)).

While Williams is correct that Dr. Parmet testified that Williams's hepatitis C and kidney problems were preexisting conditions, he also contradicted this testimony by stating that the disability was due to the cirrhosis and removal of the kidney, both of which he testified occurred after the Primary Injury. The Commission did not substitute its own judgment for the medical testimony of Dr. Parmet. The Commission made a credibility determination and accepted Dr. Parmet's own testimony that the disabling conditions did not predate the Primary Injury and found, correctly based on that factual finding, that the

11

Fund is not liable for an asymptomatic preexisting condition that was not made worse by the Primary Injury nor was it a hindrance or obstacle to employment at the time of the compensable injury.

Williams's second point on appeal is denied.

### III.

Williams's final point on appeal alleges that the Commission erred in failing to find that Williams was permanently totally disabled because the overwhelming weight of the evidence supported such a finding. As noted above, this Court is limited in its review of a final award to four particular grounds. Section 287.495.1. This challenge is brought under subsection four, "[t]hat there was not sufficient competent evidence in the record to warrant the making of the award." Section 287.495.1(4). "A section 287.495.1(4) challenge succeeds only in the demonstrated *absence* of sufficient competent substantial evidence; evidence *contrary* to the award of the Commission, regardless of quantity or quality, is 'irrelevant.'" *Nichols v. Belleview R-III Sch. Dist.*, 528 S.W.3d 918, 922 (Mo. App. S.D. 2017) (citing *Hornbeck v. Spectra Painting, Inc.*, 370 S.W.3d 624, 629 (Mo. banc 2012)). "Sufficient competent evidence is a minimum threshold and can be satisfied by the testimony of one witness, even if there is contradictory testimony from other witnesses." *Robinson v. Loxcreen Co.*, 571 S.W.3d 247, 249 (Mo. App. S.D. 2019) (internal quotation omitted).

In determining the validity of a challenge under section 287.495.1(4), this Court follows a specific analytical framework. The Southern District has recently streamlined

12

the previously used four step analytical framework by combining steps two and three.[5]

*Robinson*, 571 S.W.3d at 250-51. We find that the condensed three step process more clearly reflects the facts of this case and thus choose to adopt this framework:

1. Identify a factual proposition necessary to sustain the Commission's result;

2. Marshal all evidence in the record supporting that factual proposition, subject to the Commission's authorized factual and credibility determinations, explicit or implicit, and viewing the record objectively where there were no explicit or implicit findings;

3. Demonstrate why the evidence from the second step lacks sufficient probative force on the issues, such that the Commission could not have reasonably believed the factual position set forth in step one.

*Id.* Because Williams had the burden of proof, the question is not whether there was sufficient evidence to support an award in his favor, our review is to determine whether the award of the Commission is supported by competent evidence, not whether an opposing award could have been made. *Dehatre v. Smith & Nephew Equip. Grp.,* 892 S.W.2d 369, 371 (Mo. App. E.D. 1995) (overruled on other grounds by *Hampton*, 121 S.W.3d at 223).

The term "total disability" means the "inability to return to any employment and not merely inability to return to the employment in which the employee was engaged at the time of the accident." Section 287.020.7.[6] Permanent total disability arises when the

---

[5] Successful "against the weight" challenges, by their nature, involve four steps:
    1. Identify a factual proposition needed to sustain the result;
    2. Marshal all record evidence supporting that proposition;
    3. Marshal contrary evidence of record, subject to the factfinder's credibility determinations, explicit or implicit; and
    4. Prove, in light of the whole record, that the step 2 evidence and its reasonable inferences are so non-probative that no reasonable mind could believe the proposition.
*Jordan v. USF Holland Motor Freight, Inc.,* 383 S.W.3d 93, 95 (Mo. App. S.D. 2012).
[6] Section 287.020.7 was subsequently moved to section 287.020.6 after Williams's Primary Injury.

13

employee's injury is such that the employee has become permanently unemployable on the open labor market and is entitled to benefits through the remainder of the employee's lifetime. Sections 287.020, 287.220; *Archer v. City of Cameron*, 460 S.W.3d 370, 375 (Mo. App. W.D. 2015). "If a claimant establishes either (1) that the preexisting partial disability combined with a disability from a subsequent injury to create a permanent and total disability or (2) that the two disabilities combined result in a greater disability than that which would have occurred from the last injury alone, then the Fund is liable for that portion of disability that is attributable to the preexisting condition." *Lawrence*, 470 S.W.3d at 13. "The primary determination is whether an employer can reasonably be expected to hire the employee, given his or her present physical condition, and reasonably expect the employee to successfully perform the work." *Lewis v. Treasurer of State*, 435 S.W.3d 144, 159 (Mo. App. E.D. 2014) (quoting *Highley v. Von Weise Gear*, 247 S.W.3d 52, 55 (Mo. App. E.D. 2008). "'Employability is a matter within the Commission's expertise' and we are not to 'substitute our judgment for that of the Commission.'" *Archer v. City of Cameron*, 460 S.W.3d 370, 376 (Mo. App. W.D. 2015) (quoting *Stewart v. Zweifel*, 419 S.W.3d 915, 918 (Mo. App. S.D. 2014)). It is a factual, not a legal question. *Archer*, 460 S.W.3d at 376. The claimant "has the burden to establish permanent total disability by introducing evidence to prove [his] claim." *Lewis v. Kan. Univ. Med. Ctr.*, 356 S.W.3d 796, 800 (Mo. App. W.D. 2011).

### A. Preexisting Conditions

Williams injured his back multiple times in the 1980s. This included a workplace fall while working at Fulton State Hospital. He eventually had discectomy surgery at L4-

and settled a corresponding workers' compensation injury for 20% of the body as a whole, referable to the low back. Both Dr. Parmet and Dr. Raymond Cohen ("Dr. Cohen") identified Williams's lower back as a preexisting disability. Williams continued to complain of chronic back pain.

Dr. Kevin Komes ("Dr. Komes") evaluated Williams for his social security claim on May 8, 2008. While Williams suggests in his opening brief that Dr. Komes found a number of difficulties Williams had with sitting, standing, walking, or lying down, in actuality, those were the self-reported limitations of Williams. Dr. Komes's assessment was that Williams had a "[h]istory of a back injury with no significant neurological findings." Further that "[b]ased on today's evaluation, there are no significant abnormalities that prohibit sitting, standing, walking, lifting, carrying or handling objects, hearing, speaking, or traveling."

Williams additionally attempts to rely on Williams's liver and kidney issues to support his claim of permanent total disability. As fully discussed above, Dr. Parmet testified in 2012 that the cirrhosis had developed in "the last ten years or so" supporting a finding that it arose after the 2000 Primary Injury. Additionally, Williams provides no evidentiary support for his contention that the kidney mass that was discovered after the Primary Injury was "clearly pre-existing and needed to be removed even before the accident." There is no medical evidence to support such a contention.

Thus, based on the evidence presented to the Commission, the Commission was free to believe that the only relevant preexisting condition from which Williams suffered was the injury to his lower back.

15

## B.  Inability to return to the Workforce

As highlighted by the Commission, no vocational expert testified regarding Williams's employability on the open labor market.  Williams sought to meet his burden solely through medical testimony which, ultimately, failed to establish that he was unable to compete for work in an open job market.

Dr. Cohen's opinion was that "Williams is permanently and totally disabled *from his prior employment* as an over-the-road tractor-trailer driver or any similar type of work of that nature." (emphasis added)  Dr. Cohen believed that Williams "could be employed doing sedentary work if such work was available for him" although he had numerous restrictions including that Williams could not do work that required "prolonged sitting or standing for greater than 30 minutes, prolonged walking for greater than 20-30 yards, no pushing, no pulling or lifting greater than 10-15 pounds, no climbing, and no ladder work or any similar type of work."  Williams argues on appeal that the restrictions effectively prohibited Williams from working.  However, Williams presented no evidence that he was unable to perform the sedentary work referred to by Dr. Cohen or that no such work was available given his restrictions.  The Commission itself found that Dr. Cohen's conclusion was "significant in the absence of additional testimony from a vocational expert . . . ."  Regardless of whether a vocational expert is required, in this case, Williams failed to put forth sufficient credible testimony that his pre-existing conditions combined with the Primary Injury to render him unemployable on the open job market--evidence which a claimant is required to produce to support a finding of permanent total disability.  Instead, Dr. Cohen testified that Williams was only excluded from the type of employment he

16

previously held. *See* Section 287.020.6 (total disability means "inability to return to any employment and not merely mean inability to return to the employment in which the employee was engaged at the time of the accident.")

Dr. Parmet testified at his deposition that he lacked sufficient information to determine whether Williams was permanently and totally disabled. He was provided with the additional information but in his updated report issued in 2016, he merely stated that the Williams's preexisting conditions--including his hepatitis C and kidney issues discussed above--created a greater degree of disability than would have otherwise existed by the Primary Injury alone. He gave no opinion as to whether Williams's injuries and physical conditions rendered him unemployable under the statute.

Dr. Komes, who evaluated Williams in 2008 for his social security disability claim, found that there were no prohibitions on Williams "sitting, standing, walking, lifting, carrying or handling objects, hearing, speaking, or traveling."

With or without a vocational expert, Williams bears the burden of demonstrating that his disabilities combined to render him unemployable on the open labor market. Williams notes that he was not gainfully employed following the Primary Injury. However, as detailed above, Williams spent the majority of his life following the Primary Injury incarcerated and just because a person is unemployed does not necessarily equate with being unemployable.

The Commission found Williams's testimony on the issue of disability to be not credible. The Commission stated that Williams was not credible because he downplayed his prior back injury and exaggerated his pain and disability regarding the Primary Injury.

17

Williams contends that this was an improper finding because Williams should not have been expected to always accurately remember his medical history and, further, he did not have an opportunity to testify before the ALJ or Commission. Such arguments, however, address the weight of the evidence and do not affect the deference we give to the Commission's finding regarding the credibility of witnesses. *Lawrence*, 470 S.W.3d at 12.

Additionally, the Commission's finding that Williams was not credible is supported by Dr. Parmet and the interactions he had with Williams during his physical evaluation. Dr. Parmet stated in his reports that:

> Williams also displayed a considerable amount of symptom magnification during the evaluation of his knees and affectively interfered with attempts to evaluate his degenerative joint disease. Therefore, although I know that he had some degree of degenerative joint disease in his knees at the time of the occupational injury, I cannot affirm that the amount of chondromalacia present was significant enough to rise to a level of Second Injury Fund consideration.

Dr. Parmet noted that when he was examining Williams, Williams stated that he could only sit for 15 minutes but that he sat for 40 minutes during the interview. Further, Dr. Parmet's notes reflect that Williams reported that his right thumb had "decreased strength and cramps, and is weak. However, he continued to gesture to his right hand while describing the left thumb injury."

Williams argues that for the Commission to rely on Dr. Parmet's conclusions regarding Williams's veracity, it must also accept Dr. Parmet's conclusion regarding Williams's preexisting conditions. Williams cites to no case law for this proposition, nor is such an argument logically sounds. "The Commission is free to believe some, all or none of any witness's testimony." *Dierks v. Kraft Foods,* 471 S.W.3d 726, 737 (Mo. App.

18

W.D. 2015)(internal citation omitted). Further, as noted above, the Commission's finding regarding the preexisting conditions testified to by Dr. Parmet was not that Dr. Parmet's opinion was not credible but merely that he incorrectly included disabilities that, by his own testimony, did not pre-date the Primary Injury and were therefore irrelevant to the analysis.

### C. Lack of Probative Force

Williams presented no competent testimony that he was unable to compete in an open job market when considering only his pre-existing conditions and the Primary Injury. At best, Dr. Cohen testified that he could not return to his prior job as a truck driver. It was Williams's burden to prove that his preexisting conditions combined with his Primary Injury to render him unable to obtain a job on the open market and he failed to produce such evidence.

The issue before us is not whether Williams presented sufficient evidence to support a finding of permanent total disability, the issue is whether the totality of the evidence supported the Commission's award. The Commission found that Williams was not a credible witness regarding his disabilities. The expert evidence that Williams put forth to support a finding of permanent and total disability was flawed. While Dr. Parmet did testify that Williams may have been permanently and totally disabled, in reaching this conclusion he relied on conditions that, by his own testimony, did not preexist the Primary Injury. Dr. Cohen testified that, although Williams was no longer employable in his previous profession as a truck driver, he could be employed in sedentary work. Additionally, the medical records of Dr. Komes supported a finding that Williams did not

19

suffer from medical conditions that made him unemployable on the open market. The Commission did not err in finding that Williams did not meet his burden of establishing total permanent disability and therefore the Commission's award denying him coverage was supported by substantial evidence.

Williams's third point on appeal is denied.

## Conclusion

For the reasons stated above, we affirm.

_____
Gary D. Witt, Judge

All concur

20